McKAIG *v.* NORTHERN PAC. R. Co.

*(Circuit Court, D. Minnesota.* September, 1889.)

FELLOW-SERVANTS—FIREMAN AND TELEGRAPH OPERATOR.

A telegraph operator employed by a railroad company to give information in regard to the location of trains on the road, and to communicate to the operators on the trains instructions for running them, received by him from the train dispatcher, is a fellow-servant of the firemen on such trains.

At Law. Motion by defendant to instruct the jury to find a verdict for defendant.

The facts in this case are as follows: On November 3, 1886, at 11:15 P. M., there was a collision between an east and a west bound freight train of the defendant, at Tower City, Dak., seven-eighths of a mile east of Tower City station, whereby the plaintiff, a fireman on the west-bound train, was injured, and this action is brought recover damages for such injuries. The two trains at the time of the collision, and for some time prior thereto, had been running on telegraphic orders emanating from the train dispatcher at Jamestown, to the local operator at Tower City, which method of running said trains had become necessary from the fact that the east-bound train was a special, and was also continually losing time, and the west-bound train was some hours behind time. The stations along defendant's line, as far as are material in this case, are, commencing at the east, Casselton, Buffalo, Tower City, Valley City, and Jamestown. When the east-bound train was at Valley City, the west-bound train was at Casselton, and the train dispatcher at Jamestown, while these trains were at these respective stations, telegraphed orders, which were duly delivered to the trainmen of each train, to meet each

other at Buffalo, and after the delivery of this order to the engineer and conductor of the respective trains each train started on its journey. The east-bound train, however, lost so much time in getting up a heavy grade just east of Valley City that it became necessary to change the meeting point, and place it further west than Buffalo. The orders of the company regulating the movements of trains by telegraphic orders are as follows:

"The general rule to be observed in moving freight trains against each other is to obtain the understanding of the conductor and engineer of the train having the right to the road before running any train against them. If, however, the conditions are favorable for holding freight trains through the operator, and serious delays can be avoided thereby, dispatcher can depend upon the signature of the operator, green signals, and torpedoes, to hold such ruling train for orders at any telegraph station other than the meeting point, and, in extreme cases, trains can be held for each other at the meeting points by putting out red signals and torpedoes 1,000 feet in both directions from the telegraph office in addition to the green signal and torpedoes at the telegraph office. When there is no telegraph office at the meeting point, the red signal and torpedoes must be used for holding at the telegraph office distant from the meeting point."

The train dispatcher at Jamestown telegraphed the operator at Tower City to put out the signals required by the rules to flag and hold the east-bound train for orders, and shortly afterwards said operator telegraphed back to the train dispatcher that the signals were out. The train dispatcher then issued the order changing the meeting place of the trains from Buffalo to Tower City. This order was delivered to the conductor and engineer of the plaintiff's train when it reached Buffalo, and thereupon that train proceeded from Buffalo, expecting to meet the east-bound train at Tower City. Orders were also sent to the operator at Tower City to be delivered to the conductor and engineer of the east-bound train when it reached that point. The east-bound train, however, ran through Tower City without stopping, and collided with the plaintiff's train, seven-eighths of a mile east of Tower City. The negligence charged is that the telegraph operator at Tower City failed to and neglected to put out the signals, as required by the rules of the company, in order to stop said east-bound train, and that the company therefore is liable.

*C. D. & T. D. O'Brien*, for plaintiff.

*J. C. Bullitt, Jr.*, for defendant.

NELSON, J. In this case I am constrained, from my view of the law, to say that the motion made by defendant's counsel must be granted. To entitle the plaintiff to recover under any circumstances, it is necessary for him to show that the injury which he sustained was in consequence of the negligence of the defendant. The collision was due to the negligence of somebody. If it was the negligence of the engineer of the east-bound train, owing to the fact that he was running too fast, so that he could not stop, or he failed to see any signals if any were put out, plaintiff cannot recover, because he was a fellow-servant and co-employe

under the same employer, and the injury was due to the negligence of a fellow-employe in the same employment.

But it is claimed on the part of the plaintiff that the accident was due to the failure on the part of the operator to comply with the orders given 'him by the train dispatcher, and that his negligence was the negligence of the defendant; or, at least, that the defendant was liable for any injury that was occasioned by a failure on the part of the operator to fulfill his duty. Now, the rule is well settled that any injury occurring to a fellow-servant, through the negligence of another servant engaged in the same common employment, exempts the master from all liability. The best definition I find of a "fellow-servant" is in *McAndrews* v. *Burns*, 39 N. J. Law, 117. A "common employment" is defined to be "a service of such a kind that in the exercise of ordinary sagacity all engaged in it may be able to foresee, when accepting it, that through the negligence of a fellow-servant it may probably expose them to injury." That is a clear and distinct definition. The definition given and recognized by courts for a long time was that all persons employed by the same employer or master engaged in a common enterprise are fellow-servants, and that any act of negligence done by one of them would exempt the master. One of the limitations to that rule recognized by the courts is that where an employe is placed in charge of the entire operation or of a separate department, either in regard to the entire work or a separate department, with full control of the same, he is a representative of the master, a vice-principal, and for his acts the employer is responsible. As far as railroads are concerned, an example is a general superintendent; he represents the company. So a road-master, a foreman in charge of machine-shops, persons having either entire control of the work and management of it or departments, and heads of departments. Another limitation is that wherever an employer, instead of discharging an absolute duty which he owes to the employe himself, intrusts it to another agent or employe, such agent or employe is not a fellow-servant, within the meaning of the rule of liability for negligence. As an instance of that, the obligation exists that suitable machinery shall be furnished to the employe, and a safe place for the employe to work in. That is an absolute obligation on the part of the employer. If he does not do it himself, but intrusts it to an agent or another employe, and that agent or employe is guilty of negligence in not furnishing suitable machinery, or in not furnishing a proper place for the employe to work in, he represents the employer, and a failure of duty on his part, or want of care on his part, renders the employer responsible for his negligence. Another limitation has been recognized by courts of high authority, and that is where two employes, serving the same employer, are engaged in different classes of work, they are not regarded as fellow-servants or fellow employes. Judge MILLER decided a case (*Garrahy* v. *Railroad Co.*, 25 Fed. Rep. 258) where a laborer was employed in distributing rails along a track to be used in replacing the old rails. The person managing a switch-engine in the neighborhood, in the same yard, transferring cars in one part of the yard to another, by his negligence injured the laborer, who was distributing these rails in

connection with other laborers under a foreman or boss, and the court held that, inasmuch as the person managing the switch-engine was not transferring cars which were loaded with rails to be used by the laborer in distributing them along the track, he was not a fellow-employe or co-employe with the laborer, and the company was liable for his negligence.

It is claimed that in the *Ross Case*, as it is called, (8 Fed. Rep. 544,) which went to the United States supreme court from this court, (5 Sup. Ct. Rep. 184,) it was held that the fact that one man was subordinate to another, and under his control, made the master responsible for the actions of the person so in authority or control.

I do not think that the supreme court of the United States laid down any such doctrine, and that is the opinion of the present circuit judge of this circuit, Judge BREWER, and he has declined to recognize it in this circuit court. See *Howard* v. *Railroad Co.*, 26 Fed. Rep. 837.

In the *Ross Case*, Judge FIELD's opinion was confined exclusively to the case in hand,—the negligence of the conductor; and while he reviewed the authorities in regard to the question of fellow-servant, and defined the limitations to the general rule which existed, it cannot be said that the court intended, and I think it expressly says that they did not intend, to decide any further than that decision goes; and that is, that the conductor was the representative of the railroad company in the management and control of that train.

In this case it is claimed that the act which the telegraph operator at Tower City was to perform was an act which the employer, under his obligation to the employe, was required to perform; that it was his act; and that the telegraph operator, in the discharge of his duty in performing that act, represented the company; and that an omission on his part to perform that act was the omission of the railroad company. I do not think this case comes within that limitation. The telegraph dispatcher of that department at Jamestown undoubtedly represented the company, and if he had been guilty of any negligence the company could be held responsible. But he was guilty of no negligence. He telegraphed to this operator, and received an answer back that everything required to be done in order to stop the east-bound train had been done, so that the negligence would be the negligence of the telegraph operator. Is the telegraph operator a fellow-employe with the fireman who was injured on the west-bound train? It is well known, under the rules of the company, that the purpose of his employment was to give information with regard to the location of trains upon the road, and also to communicate any instructions to the operators of these trains how to run, and when and where to stop and start, so that, as far as the operators of these trains were concerned, he was connected with the operation of them. He was instructed by the train dispatcher to take steps to inform the persons operating the west-bound train to stop and meet the east-bound train at Tower City.

The engineers and firemen of the east and west bound trains were in the same common employment, having the same object in view, and so was the telegraph operator at Tower City, who, under his duty and the

orders which were sent to him, was required to communicate information to the engineer of the east-bound train how to run and what to do. He was a co-employe with them in the same common employment—common service—of operating both trains at that time, and, within the definition of who are "fellow-servants" and who are "co-employes," I think he comes within that rule. So that, as the case now stands, even if the jury should find sufficient evidence tending to show that the telegraph operator failed in his duty, although he states that he had performed it, yet, under the rule of law as I have announced it, the plaintiff cannot recover. The negligence of the telegraph operator was not the negligence of the railroad company.

The motion must be granted. Ordered accordingly.