CINCINNATI, N. O. & T. P. R. CO. v. CLARK.

(Circuit Court of Appeals, Sixth Circuit. June 22, 1893.)

No. 81.

1. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—RAILWAY COLLISION—ENGINEER'S NEGLIGENCE NOT IMPUTABLE TO FIREMAN.

The neglect of a locomotive engine driver to keep a proper lookout, and his consequent failure to avert a collision caused by the negligence of his employer's vice principal, is not imputable as contributory negligence to the fireman of the same engine, who is injured in the collision.

2. SAME—FELLOW SERVANTS — TELEGRAPH OPERATOR AND LOCOMOTIVE FIRE-
MAN.
A telegraph operator at a way station, whose duty it is, under the gen-
eral rules of the railway company, to display signals to prevent one train
following another on the same track too closely, is the fellow servant of
a locomotive fireman, injured in a collision caused by the operator's
neglect of such duty. Railroad Co. v. Charless, 2 C. C. A. 386, 51 Fed. Rep.
567, distinguished. McKaig v. Railroad Co., 42 Fed. Rep. 288, approved.

In Error to the Circuit Court of the United States for the South-
ern Division of the Eastern District of Tennessee.

At Law. Action by F. A. Clark, administrator, against the Cin-
cinnati, New Orleans & Texas Pacific Railroad Company, to recover
damages for the death of W. R. Clark. Verdict and judgment were
given for plaintiff. Defendant brings error. Reversed.

Statement by BARR, District Judge:

This is a suit to recover damages for the death of plaintiff's intestate, W. R.
Clark, who was killed in a tail-end collision of two trains on the 23d of May,
1891, near Melville station, Tenn.

The defendant, the Cincinnati, New Orleans & Texas Pacific Railroad Com-
pany, ran and operated trains on a single track railroad between the cities
of Cincinnati and Chattanooga, and had on the night of the 23d of May, 1891,
two trains running south to Chattanooga. No. 1 was the fast passenger ex-
press train, which stopped only at a few of the stations, and the other, No.
7, was the mail passenger train, which was slower than No. 1, and stopped at
the principal stations and all others when signaled.

The schedule time made these trains 30 minutes apart at Evansville station,
and this decreased as they ran south, until by the schedule they were to ar-
rive at Chattanooga 15 minutes apart,—No. 7 at 9 P. M., and No. 1 at 9:15
P. M.

Both trains were on the day of the accident behind their schedule time,
and from Dayton, a station 20 9-10 miles north of Melville, (the place of the
collision,) No. 7 was running on the time of No. 1. Train No. 1 caught and
ran into train No. 7 at Melville station, just as that train had gotten some
200 feet beyond the station. That train had the proper signal lights out at
the end, and slowed up to let a passenger get off at Melville. The track as
these trains ran to Melville station was straight for some distance, say 1,950
feet, and down a .de.

W. R. Clark, who was the fireman, and Mr. Chapin, who was the engineer,
on No. 1, seeing a collision inevitable, jumped from their engine, and were
killed,—Chapin instantly, and Clark hurt so badly that he died in a few
days.

This suit was brought in state court, and removed to this court. After
removal, plaintiff filed a declaration containing nine counts, alleging negligence
by the defendant, so as to cover every view which the testimony might possi-
bly present. There was a trial and a verdict against defendant for $10,000.

Lewis Shepherd, Edward Colston, and George Hoadly, Jr., for
plaintiff in error.

Spurlock & Latimore, for defendant in error.

Before JACKSON and TAFT, Circuit Judges, and BARR, District
Judge.

BARR, District Judge, (after stating the facts.) The defendant
has taken a writ of error, and has assigned, as we read the record,
three errors:

(1) Because the trial court overruled the motion to instruct the
jury to find for the defendant.

(2) Because the court erred in the charge on the question of plaintiff's intestate's contributory negligence.

(3) Because the court instructed the jury that Jenkins, the operator at Rathburn, a telegraph station, was not the fellow servant of Clark in the performance of his duty in regard to giving the signal and holding trains so there should be at least ten minutes between them.

The four subdivisions of error No. 1 cannot be considered as separate assignments of error, as they were not excepted to at the trial. We presume, however, these subdivisions were only intended to subdivide the argument presented to sustain the general assigned error of refusal to give the instruction to find for defendant.

There were no exceptions to the charge of the court other than errors No. 2 and 3; hence this court can only consider the errors to the charge reserved at the trial.

The only exception to the charge of the court is this, viz.:

"The defendant duly excepted at the time to all that part of the charge of the court to the jury to the effect that the operator or signalman at Rathburn, in respect to his duty to keep the two trains ten minutes apart, was not a fellow servant of the plaintiff's intestate; and to all that part of the charge of the court which in substance and effect instructed the jury that the plaintiff's intestate was not guilty of contributory negligence in failing to see the obstruction on the track caused by the position of No. 7 thereon, and in failing to give notice of the obstruction to the engineer."

We need not discuss the first error assigned if neither of the others are sustained, because the only other question to be considered on this assignment of error would be the proximate cause of the death of Clark. The court, under the evidence, should not have taken that question from the jury. The court left the jury to determine the proximate cause of the death, saying that both Chapin, the engineer on train No. 1, and Martin, conductor of train No. 7, were fellow servants of Clark, and the defendant company was not liable for their negligence.

If, therefore, neither the second nor third assignments of error is sustained, the first must be overruled.

We do not find that the trial court gave, or was asked to give, any distinct instruction in regard to the contributory negligence of Clark. The court did say to the jury:

"In my opinion, this whole case centers around the conduct of that dispatcher or operator at Rathburn, or Soddy, as some call it. There is a difference in the statements of the witnesses as to what occurred there; some of the witnesses swearing to one thing, and some of them to another thing. In my opinion, gentlemen of the jury, if you find from proof that the telegraph operator there at Rathburn did not signal this train No. 1, or detain it there until the ten minutes had elapsed from the departure of the other train, this failure to do so was negligence on the part of the company; that he was not a fellow servant of the intestate, but that he was a vice principal of the defendant, and therefore the defendant would be responsible for his negligence, if any injury resulted from it."

And in a subsequent part of his charge the court said to the jury:

"Now, if the proximate cause of the injury was the negligence of this telegraph operator at Rathburn, and the engineer of the train No. 1 was guilty

of negligence, why, that would not preclude this plaintiff from recovering. Whatever effect it might have in a case between the engineer and the railroad, it would have nothing to do in this case. This man had nothing to do with the control of the engine, and if Chapin was ever so negligent in controlling that engine, and the injury resulted from the conduct of the train dispatcher, why, the plaintiff would still be entitled to recover."

The court was correct in telling the jury that Clark had no control over the engine, and also in saying, if the negligence of the company, through its vice principal, caused his death, the negligence of Chapin would not preclude a recovery. See Railway Co. v. Cummings, 106 U. S. 700, 1 Sup. Ct. Rep. 493. This was, however, not a charge upon the subject of the contributory negligence of Clark in not seeing and informing Chapin of the obstruction, in time to prevent a collision. But if we assume the language of the charge negative, the idea of contributory negligence upon the part of decedent, there was, we think, no error. For Clark to have been guilty of contributory negligence under the circumstances, he must have seen and known the character of this obstruction in time to notify the engineer, so that he could have stopped his train and avoided the collision, and have failed to thus notify him; or he must have failed to perform his duty by seeing this obstruction in time and notifying the engineer, so that he might have avoided the collision. There is not the slightest testimony tending to prove Clark did actually see this obstruction in time to notify the engineer, that he might avoid the collision. Indeed, there is not the least evidence to prove that Clark did not notify the engineer in time to avoid the collision. Had he seen this obstruction and known its character, self-preservation would have impelled him to have notified the engineer Chapin of the impending danger immediately.

Clark's principal duty as fireman was to look after the engine, and fire the furnace, and his duty as a lookout was secondary to this. In the absence of all testimony showing or tending to show that he was not thus engaged, or tending to prove that he did not immediately communicate any information he had, or could have had by the greatest diligence, to the engineer, the court was right in ignoring the question of his contributory negligence. The testimony of several witnesses introduced by the defendant company was to the effect that they did see on a night selected for that purpose the signals on train No. 7 when at Melville by looking across the curve in the railroad, a distance of about 2,800 feet, and from the end of the curve next Melville, a distance of 1,950 feet, and that they continued to see this signal down the straight track all this distance of the 1,950 feet. But such evidence as this did not require the court to call the attention of the jury to the question of Clark's contributory negligence, especially as he was not requested to do so.

We pass to the consideration of the other assigned error, which is the important question, and that is whether Jenkins, the telegraph operator, represented the company as vice principal. Rathburn was the last telegraph station passed by these trains before

the collision at Melville, which is 3 9-10 miles distant, and there is conflict in the testimony as to the time of the passages of these trains. There is some testimony tending to prove that train No. 1 passed Rathburn within two or three minutes after train No. 7 had left that station, and other testimony tending to show that these trains were as much as 10 minutes apart when they passed this station. Train No. 1 did not stop at this station, but passed on under a white or clear signal placed by the operator; but it is evident the jury found, under the instruction of the court, that Jenkins, the telegraph operator, was guilty of the negligence which caused the death of the plaintiff's intestate, and thus the liability of defendant was fixed.

The rules of the defendant's company provide under head of "Movement of Trains:"

"A train must not leave a station to follow a passenger train until ten minutes after the departure of such passenger train, unless some form of block signal is used."

And under the head of "Rules for Telegraph Operators:"

"401. When two passenger trains are running in the same direction, they must display a red signal immediately after the first train passes, and, at the expiration of ten minutes, display a white signal to the following train."

"390. Telegraph operators report to, and receive their instructions from, the chief train dispatcher. They must obey the instructions of the station agent when they do not interfere with their duties as operators."

There were no special orders given either train No. 1 or train No. 7 by the train dispatcher through Jenkins, the operator at Rathburn. The only order given by the train dispatcher was in regard to the meeting and passing train No. 8, which was north bound, and that was through another operator. The neglect of Jenkins, if neglect there was, was his failure to use a proper signal, and to stop train No. 1 until the expiration of ten minutes after the passage of train No. 7.

A careful reading of the decisions of the supreme court satisfies us that the question under consideration has not been definitely settled by that court. This court has had occasion to consider the liability of railroad companies for injuries done employes by the negligence of another employe, and the cases of Railroad Co. v. Andrews, 1 C. C. A. 636, 50 Fed. Rep. 728, and Railroad Co. v. Howe, 3 C. C. A. 121, 52 Fed. Rep. 362, are cited by counsel.

In the Andrews Case the death was caused by a collision between train No. 37 and train No. 88, running in opposite directions. The negligence was the misreading a dispatch from train dispatcher, which ordered train No. 88 to meet and pass train No. 37 at "Bairdstown." Both the conductor and the engineer on train No. 88 read this as "Bloomdale," another station on the road, instead of "Bairdstown." Andrews was a brakeman on train No. 37, and in the collision which followed was killed. This court held the negligence of the conductor and engineer on train No. 88 was that of a fellow servant of Andrews, and that the railroad company was not liable to Andrews. 1 C. C. A. 636, 50 Fed. Rep. 728.

In the Howe Case one of the questions was whether Howe, who

was a brakeman on a freight train which had parted into two parts, was the fellow servant of the engineer who had charge of the engine and forward part of the parted train at the time of the injury, which was caused by the engine running over his arm. Hughes was the conductor of this freight train, and, when the train separated, he sent Howe forward with a lantern to signal the engine and that part of the train as it returned. Howe fell asleep on the track, and the engine, which was backing, ran over and crushed his arm. One of the complaints of negligence was that the engineer, who, by the rules of the company, was in charge of his part of the train, did not promptly stop his engine after he discovered Howe on the track. This court held the negligence of the engineer, if any, was that of a fellow servant of Howe, and the company was not liable therefor. 3 C. C. A. 121, 52 Fed. Rep. 362.

These cases do not decide the one under consideration, and we think the present question remains undecided by any court whose authority is binding upon this. It is, however, true, we think, that the trend of recent decisions, especially in the state courts, has been to make the orders of a train dispatcher the orders of the company, and his negligence in the control and running of trains the negligence of the company for whom he acts. The reason for this is that the power and authority of a train dispatcher when running trains under telegraphic orders is and must be supreme; hence the company, having thus delegated supreme authority in the special service, should be responsible for any negligence of the train dispatcher. The train dispatcher is the superior of all persons running the trains, and in a limited degree he has all persons in that service under his authority; hence, may not be a fellow servant with any of these persons when his negligence causes their injury. Sheehan v. Railroad Co., 91 N. Y. 334; Dana v. Railroad Co., 92 N. Y. 639; Lewis v. Seifert, 116 Pa. St. 628, 11 Atl. Rep. 514.

Some other decisions extended the company's liability to be for the negligence of all telegraph operators, holding that the telegraphic service is a separate and distinct department in the operation of a railroad, and that persons engaged in that service are not fellow servants of conductors, engineers, brakemen, and others in the immediate management and control of trains. Hall v. Railway Co., 39 Fed. Rep. 18; Railroad v. De Armond, 86 Tenn. 75, 5 S. W. Rep. 600.

We do not deem it necessary to determine in this case whether the negligence of a train dispatcher while in the performance of the service of running trains by telegraph is the negligence of the company in whose service he is, so far as to make the company liable for an injury done an employe in running its trains; nor to determine whether the telegraphic service used in the operation of a railroad is a separate and distinct department from that of conductors, engineers, and other trainmen, whose immediate business is the running of trains. These questions need not be and are not decided.

In this case we think the neglect of duty by Jenkins, the operator, did not arise from his failure to perform a duty which pertained to the telegraphic service, or a duty which was imposed upon him because he was a telegraph operator. This service of putting out a proper signal for passing trains, and thus seeing that no train passed within 10 minutes of another, could properly have been imposed on the station agent, or upon Jenkins, as a signalman, if he had not been a telegraph operator. It is true that by rule 390 telegraph operators report to, and receive their instructions from, the chief dispatcher, and it is also true that they must, by same rule, obey the instructions of the station agent when they do not interfere with their duties as operators. In this instance Jenkins did not receive instructions from the chief dispatcher, nor was his failure of duty in reporting or not reporting to him, but was the failure to perform a duty imposed upon him by general rules, and was a service which might have been performed by him without relation to or connection with his duties as telegraph operator. If he had in this instance stopped train No. 1, and informed the conductor of the time of the passage of the other train, his whole duty, under the rules, would have been performed, and the duty of detaining the train would have been upon others.

Jenkins was, in this service, performing a work which had for its object the same as the service of Clark, viz., the proper and safe running of trains on the road, and thus, having the same employer, and engaged in a common employment, was a fellow servant with Clark, the fireman on train No. 1., and not the vice principal of the railroad company. The relation of Clark and Jenkins was in a general way not unlike that between Randall, the switchman, and the engineman, whose unskillfulness and negligence caused the injury to Randall. In that case the supreme court said:

"They are employed and paid by the same master. The duties of the two bring them to work at the same place, at the same time; so that the negligence of the one in doing his work may injure the other in doing his work. Their separate services have an immediate common object,—the moving trains. Neither works under the orders or control of the other. Each, by entering into his contract of service, takes the risk of the negligence of the other in performing his service; and neither can maintain an action for an injury caused by such negligence against the corporation, their common master." Randall v. Railroad Co., 109 U. S. 484, 3 Sup. Ct. Rep. 326.

The counsel cite each a case to sustain their respective contentions. The one cited by counsel for defendant in error is from the circuit court of appeals for the ninth circuit,—Railroad Co. v. Charless, 2 C. C. A. 386, 51 Fed. Rep. 567. That court is excellent authority, but an examination of the case will show this was not the material point in the case, but that it had gone off on other points, and that on the trial the alleged negligence of the telegraph operator had been abandoned. The court was considering a demurrer which had been overruled, and was assuming all the allegations of the petition as true. Under these allegations, the court considered the negligence of the telegraph operator as the same as that of a train

dispatcher. This question was given only a passing notice, and the court evidently placed the case upon other grounds. The decision is not, therefore, entitled to the same weight as it would be. if the question had been material or important.

The other case, cited by the counsel of plaintiff in error, is from the circuit court of the district of Minnesota,—McKaig v. Railroad Co., 42 Fed. Rep. 288. In that case, the relation which a telegraph operator bore to the engineers, firemen, and others running trains on the road was the question, and is similar to the case under consideration, except much stronger, in that the negligence of the operator was in not signaling a train, and delivering special orders sent him by a train dispatcher, who was running the trains that collided by telegraph. The facts are briefly these: The east and west bound trains were running on telegraph orders from the chief train dispatcher of that division. The first order was that these trains should meet each other at Buffalo. One of the trains lost so much time that it became necessary to change the place of meeting of these trains to a point further west. The train dispatcher telegraphed the telegraph operator at Tower City to put out signals, and hold the east-bound train for orders. The operator, in answer, telegraphed to the train dispatcher that the signals had. been put out, and the dispatcher thereupon issued orders to change the place of meeting of trains from Buffalo to Tower City. This order was delivered to the west-bound train, and it started towards Tower City, expecting to meet the other train there. The east-bound did not stop at Tower City, but ran on, and a collision was the consequence, in which the plaintiff, a fireman on the west-bound train, was hurt. The charge was negligence of the defendant, and the case turned upon the alleged negligence of the telegraph operator in not putting up the proper signals and stopping the train, as ordered by the train dispatcher.

The court (Judge Nelson) sustained a motion to instruct the jury to find for the defendant, upon the ground that the telegraph operator was, in that service, a fellow servant of the plaintiff, and the railroad company was not liable therefor.

The court, after a review of the cases somewhat, said:

"The engineers and firemen of the east and west bound trains were in the same common employment, having the same object in view, and so was the telegraph operator at Tower City, who, under his duty, and the orders which were sent to him, was required to communicate information to the engineer of the east-bound train how to run and what to do. He was a coemploye with them in the same common employment—common service—of operating both trains at that time, and within the definition of who are 'fellow servants' and who are 'coemployes.' * * * The negligence of the telegraph operator was not the negligence of the railroad company."

In this opinion the court assumed as settled law that the negligence of the chief train dispatcher would have been the negligence of the company, and it would have been liable for any injury done plaintiff by such negligence, but drew a distinction between a chief train dispatcher and a telegraph operator. As this case was evidently put by the trial court upon the negligence of Jenkins, the

operator at Rathburn, being the negligence of the company, we are constrained to reverse it for this error in the charge.

The verdict and judgment of the court must be set aside, and new proceedings had in conformity with this opinion, and it is so **ordered**