## San Antonio & Aransas Pass Railway Co. v. Laura Harding et al.

### No. 963.

**1. Negligence—Fellow Servants—Contributory Negligence.**

Where defendant's failure to exercise proper care to see that the headlight upon its engine was in good condition was one of the causes contributing to the death of an employe, defendant would be liable, even though it were true that the negligence of fellow-servants of deceased also contributed to his death. The fact that the negligence of a fellow-servant merely contributed to the injury does not relieve the company, if its own negligence or that of its employes who were not fellow-servants with the injured person also contributed to it.

**2. Fellow Servant's Act—Who are Not Fellow Servants—Engineer—Yard Employes.**

Under our fellow-servants act (1893) employes, in order to be fellow-servants, must be in the common service, in the same department, of the same grade, working together at the same time and place, and to a common purpose. Therefore an engineer who receives his orders from the trainmaster is not a fellow-servant with employes working in the yard, unless in the performance of his duty he becomes temporarily subject, while operating in the yards, to the supervision of the yard foreman. Then he might be considered for the time a fellow-servant with the others, subject to the same authority, but not with the foreman himself.

**3. Fellow Servants—Instruction as to—Engineer—Yard Master.**

Where there was evidence tending to show that engineers while in the yard were subject to the control of the yardmaster, it was not improper for the court to instruct the jury that even in that view an engineer and yardmaster were not fellow-servants.

**4. Same—Harmless Error.**

If none of the employes in the yard were fellow-servants of deceased, then even if the court committed error in defining those who might be fellow-servants it would be immaterial.

**5. Special Charge—Refusal of Proper, When.**

A special charge was properly refused where the substance of it had been given in the general charge and other special instructions.

**6. Evidence, Sufficiency of—Negligence.**

Where the evidence showed that the switch engine had a defective headlight, and that the road engineer was unable to see it on the main track, and the yard foreman and employes failed to notify him of its presence, which caused him to collide his engine with it, resulting in his death, the company would be liable.

**7. Verdict Not Excessive, When.**

A verdict against defendant for $16,000 for causing the death of an employe, though more than the court would have allowed if trying the case, is not so clearly excessive as to authorize its reversal.

Appeal from Harris.   Tried below before Hon. S. H. Brashear.

*O. T. Holt*, for appellant.—1.  It is improper to charge upon issues not before the jury.   19 Texas, 316; 22 Texas, 722; 42 Texas, 455; 45 Texas, 38; 47 Texas, 28; 48 Texas, 379; 56 Texas, 79; 73 Texas, 83; 80 Texas, 314, 378; 81 Texas, 478; 82 Texas, 446; 2 Texas Civ. App., 613; 2 Posey, 475.

2.  When a charge is applicable to the facts of the case, and properly presents the law, it should be given, and it is error to refuse it.   Acts of Legislature, 1893, page 120; 53 Am. & Eng. R. R. Cases, 571.

3.  A verdict and judgment will be set aside when clearly against the evidence.   59 Texas, 71; 61 Texas, 282; 65 Texas, 369; 64 Texas, 401; 63 Texas, 502, 503, 504.

*Wheeler & Rhodes* and *Henry F. Fisher*, for appellees.—1.  A harmless erroneous charge is not reversible error.   Railway Co. v. Finley, 32 S. W. Rep., 51; Railway Co. v. Hall, 78 Texas, 659; Railway Co. v. Watts, 63 Texas, 552.

2.  The court did not err in refusing the special charge asked for by appellant, for the reason that every proposition therein, and the subject matter of the same, had been fully and substantially given, and almost in the identical language of the charge of the court.   37 Am. St. Rep., 199; Railway Co. v. Kirk, 62 Texas, 233.

3.  The court will not disturb a verdict on the sole ground that in its opinion the proof was not sufficient to support it, when it appears there was lawful evidence on which to base such a verdict.   62 Texas, 361; 61 Texas, 349; 59 Texas, 76.

WILLIAMS, Associate Justice.—This is an appeal from a judgment for $16,000 against appellant in favor of Mrs. Harding, the widow,

and the other appellees, the minor children of Edward Harding, for damages resulting from his death, which occurred at Waco in April, 1893, in a collision between the engine in which Harding was engineer and another engine used in switching in appellant's yard.

The pleadings raised the questions decided, and it is unnecessary to state them.

Deceased was an engineer, in the service of appellant, in charge of a train going from Yoakum to Waco. He was under control of the train-master at Yoakum. In appellant's yard at Waco was a regular yard crew, consisting of night yardmaster, or foreman, a yard engineer, or "hostler," a fireman, and other employes, and these were engaged in switching cars in the yard with engine No. 53. All of these local employes were under the immediate supervision and control of Hall, the foreman, who, when on duty, had the direction of all such operations in the yard as the movement of engines, cars, etc. Over Harding this foreman had no control whatever, except that there is evidence tending to show that the authority of the foreman extended to the movement of all engines and trains after they came within the yard limits. Other evidence would lead to the inference that when an engineer, such as Harding, brought his train into the yard he had nothing more to do with it, but left the handling of it to the local employes. Engine No. 53 had been brought into Waco off the road in the afternoon preceding the occurrence in question, with the lamp of its headlight leaking. About an hour and a half before Harding's train arrived, this engine was taken to be used for switching cars in the yard. The lamp was found empty and was refilled and lighted by the engineer and fireman who, it seems, had not been notified of its defective condition. When last observed by any of the employes in the yard, about thirty minutes before the collision, which occurred about 4:30 a. m., the light was still burning. If it was burning when Harding arrived in sight, it should have been visible to him for two miles or more before he reached the yard, but the evidence is sufficient to show that it had then gone out. The men in the yard received notice as early as three o'clock that Harding's train was to arrive about four o'clock. In the interval a large number of cars were moved in upon the main track by another road and these had to be placed upon side tracks and the switching crew were engaged in this work. These employes heard the noise of Harding's train as it rounded a curve two and a half miles from the yard, and were constantly aware of its approach until the collision occurred. The switch engine was upon the main line one hundred and seventy-five to two hundred feet south of the first switch and faced southward, the direction from which the train was coming. Behind it were a number of cars which the men were endeavoring to move upon the side track. Nothing was done to give Harding warning of its presence or prevent a collision, except that when he had approached so close that he had not time to stop and avoid the danger, the other engineer, with his lantern, gave him a signal to stop, and then endeavored to back the switch engine out of his way,

but was prevented by the number of cars already occupying the side tracks. A rule of the company provided that yard engines could use the main track and might be expected to be there at any time and that all trains must be under perfect control while passing through the yards. The evidence conflicted as to the rate of speed at which Harding brought in his train, but there was enough to show that it was not over six miles per hour, and that this was the customary rate of speed in passing through the yards and was construed, by the general practice in appellant's service, to be a compliance with the rule. Deceased failed to discover the switch engine because of the absence of the headlight, and received no other sufficient warning.

From these facts, we conclude that defendant, by the use of ordinary care, should have known of the defective condition of the lamp, and that it was likely to go out and endanger the lives of the employes, and that the use of such a lamp was negligence on the part of defendant; that those operating the switch engine, with knowledge of the fact that the train was approaching, should, in the exercise of ordinary care, have given some warning or notice of the presence of the cars on the main line, or have taken some precautions to prevent the collision, and their failure to do so constituted further negligence; and that the use of a defective lamp and the omission to adopt other means to avert the danger were the proximate causes of the death of Harding. We conclude further that he is not shown to have been guilty of any negligence or omission of duty, and hence the plea of contributory negligence on his part is not sustained.

*Opinion.*—1. As negligence of defendant in failing to exercise proper care to see that the headlight was in good condition, was one of the causes contributing to the death of Harding, defendant is liable even if it were true that the negligence of employes, who were fellow servants of deceased, also contributed. There can be little doubt that, if the headlight had been kept in proper condition, it would have continued to burn and would have notified Harding of the presence of the switch engine in time to have enabled him to avoid danger. No other cause for the extinguishment of the light is suggested by the evidence but that the oil had leaked out and that none remained to feed the light. The company is responsible for the omissions of its servants to whom it left the performance of the duty of seeing after the condition of the lamp.

2. Under our fellow servant's act, the employes working with the switch engine were not the fellow servants of Harding. Laws 1893, p. 120. The employes in the yard, under the supervision and control of the yardmaster, were in a different department from engineers running trains on the road under the supervision and control of the trainmaster at another place.

It is contended that the two engineers were in the common service of the company, were in the same department, were of the same grade,

and were working together at the same time and place and to a common purpose, and, therefore, came within the definition of fellow servants as given in the statute. If this were conceded, we do not think it could. relieve appellant, even if no negligence but that of its servants were shown, because the collision can not be said to have resulted from the negligence of the yard engineer alone. If he was guilty of negligence, the foreman was also guilty, and the fact that the negligence of a fellow servant merely contributes to the injury does not relieve the company if its own negligence, or that of its employes who are not fellow servants with the injured person, also contributes. But we are not prepared to concede that the "hostler" was a fellow servant under the statute. In a sense, as stated by one of the witnesses, the two engineers were in the same department, the "motive power department," but this has reference to the divisions of its service into branches made by the company. Under its regulations, servants may be in the same department as named by it, and yet in different departments as intended by the statute. Such questions must be determined by the relations which the employes actually bear to each other, and not by the mere names that are given by the company to the different branches of the service. Nor do we think that the engineers were, in the meaning of the statute, "in the common service," or that they were "working together to a common purpose." Their superiors, to whose authority they were subjected, were vice-principals of the corporation, and stood to the servants under their control in the relation of master. This the statute expressly declares, and this provision, we think, enables us to determine what is meant by the word "departments," "common service" and "common purpose." As pointed out in Ross's case, 112 U. S., 389, there is a line of decisions holding that employes are in the same department and in a common employment only when they are subject to the same immediate supervision or control. This view had not generally prevailed, and was not adopted by the courts in this State, and it seems to us, from the whole of the statute, that it was intended to substantially adopt it. The servant having control of others is first declared to stand in the relation of master to those under him, and then, in defining the relation of other employes to each other, it is provided that, in order to be fellow servants, they must be in the common service, in the same department, of the same grade, working together at the same time and place and to a common purpose. The servants subjected to the control of different superiors are thus treated as being in separate departments and different service. When we consider that many authorities, including some of the later opinions of our Supreme Court, had expressed the view that sound reason for the existence of the rule as to fellow servants could only be found in cases where the employes were so situated with reference to each other as to be enabled to exercise over the conduct of each other that watchfulness regarded as essential to the efficiency of the service and the safety of the public, we see that the Legislature has

adopted that view, and intended to enforce it in the provisions referred to.

Under our construction of the statute, none of the employes in the Waco yard were fellow servants with Harding, unless indeed, in the performance of his duties, he became temporarily subject, while operating in the yard, to the supervision of the yard foreman. Then he might be considered for the time a fellow servant with the others, subject to the same authority, but not with the foreman himself.

The court, in its charge, gave to the jury all of the provisions of the statute, leaving them to apply them to the evidence. Contention is made that the rule applicable when one servant is entrusted with control of others should not have been given because there was no evidence to support it. As before noted, there was evidence tending to show that engineers, while in the yards, were subject to the control of the yardmaster, and, if for no other reason than to prevent confusion in the minds of the jury, it was not improper for the court to tell them that, even in that view, Harding would not be a fellow servant with the yardmaster. We think it evident that Harding, on the occasion in question, never became subject to the authority of the yardmaster, but it could have done no harm for the court to inform the jury that, if he did, they were not fellow servants.

If we are correct in our view that none of the employes in the yard were fellow servants of deceased, then, even if the court committed error in defining those who might be fellow servants, it is immaterial.

3. The special charge No. 3, requested by appellant on the subject, was properly refused. It was not in accordance with the law as we hold it to be.

4. The special charge No. 1, as to the regulation as to running in yards, was properly refused because the substance of it had been given in the general charge and other special instructions.

5. From the findings of fact stated, it follows that the assignments of error questioning the sufficiency of the evidence to sustain the verdict, are not well taken.

6. While this verdict is large, and may be for a greater amount than this court would allow if trying the case, it is not so clearly excessive as to authorize us to disregard the opinion of the jury and of the court below. In refusing to reverse such verdicts, we are not to be understood as approving them, but simply as adhering to the rules governing appellate courts in such matters.

We deem it unnecessary to discuss the merits of appellee's contention that appellant was guilty of negligence in failing to keep its track clear and in failing to have suitable regulations to provide against such occurrences as that in which deceased lost his life.

*Affirmed.*

Delivered November 28, 1895.

Writ of error refused.