## ST. LOUIS & S. F. R. CO. v. FURRY.

(Circuit Court of Appeals, Eighth Circuit. March 24, 1902.)

### No. 1,577.

RAILROADS — NEGLIGENCE—FELLOW SERVANTS—FIREMEN—TELEGRAPH OPERA-
TOR—CONSTRUCTION OF STATUTE.

Under Sand. & H. Dig. Ark. § 6248, declaring that the employés of a railway corporation shall not be considered fellow servants unless working together to a common purpose of the same grade and in the same department or service, a fireman, who was injured by a collision of trains caused by the failure of a telegraph operator to deliver orders received by him from the train dispatcher, was not a fellow servant with such telegraph operator.[1]

Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Western District of Arkansas.

This was an action by Warren G. Furry, a railroad fireman, who sued his employer, the St. Louis & San Francisco Railroad Company, the plaintiff in error, for injuries sustained in a collision between two freight trains on October 17, 1897. The circumstances which occasioned the collision were these: Train known as second 38, on which the plaintiff below was a fireman, arrived at Springdale, Ark., at 8:35 a. m. on October 17, 1897, and took the side track at that station to await the passage of a south-bound passenger train. The freight train (second 38) was running north, and was under orders to meet a south-bound freight train at Rogers, a station some 10 miles north of Springdale. When it took the siding at Springdale, it ran to the north end thereof, so as to be in a position to run out on the main track as soon as the passenger train went by, at which point the engine of the freight train was about one half a mile north of the station. While the freight train was standing on the siding, the telegraph operator at the station received an order directing the two freight trains to meet at Springdale instead of at Rogers, but the operator failed to notify either the conductor or the engineer of second 38 of this order, or to put up the customary red signal that orders were in his hands, as it was his duty to do. In consequence of such neglect on the part of the operator, second 38 proceeded north on the main track, as soon as the passenger train had passed by, and, about two miles north of Springdale, came into collision with the south-bound freight, which had received the order to meet at Springdale instead of Rogers. As a result of the collision Furry was horribly burned and otherwise injured, so as to cripple him for life. In consequence of these facts the jury awarded him damages in the sum of $16,000. To reverse that judgment, the railroad company brought a writ of error.

<hr>

[1] Who are fellow servants, see notes to Railroad Co. v. Smith, 8 C. C. A. 668; Railway Co. v. Johnston, 9 C. C. A. 596; Flippin v. Kimball, 31 C. C. A. 286.

L. F. Parker and B. R. Davidson, for plaintiff in error.

Samuel R. Chew and Joseph M. Hill (Henry Fitzhugh, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

On February 28, 1893, the legislature of the state of Arkansas passed an act, the material parts of which, as now contained in Sand. & H. Dig. St. Ark., are as follows:

"Sec. 6248. All persons engaged in the service of any railway corporations, foreign or domestic, doing business in this state, who are entrusted by such corporation with the authority of superintendence, control or command of other persons in the employ or service of such corporation, or with the authority to direct any other employé, in the performance of any duty of such employé, are vice-principals of such corporation, and are not fellow-servants with such employé.

"Sec. 6249. All persons who are engaged in the common service of such railway corporations, and who, while so engaged, are working together to a common purpose, of same grade. neither of such persons being entrusted by such corporations with any superintendence or control over their fellow employés, are fellow servants with each other; provided, nothing herein contained shall be so construed as to make employés of such corporation in the service of such corporation fellow servants with other employés of such corporation engaged in any other department or service of such corporation. Employés who do not come within the provisions of this section shall not be considered fellow servants."

This statute is the same, in substance, as one which was enacted by the legislature of the state of Texas on March 10, 1891, and it has since been adopted, in substance, by the legislature of the state of Utah (Rev. St. Utah, 1898, §§ 1342, 1343), and possibly in some other states. On the trial of the case it was admitted by both parties that the plaintiff and the engineer of his train were free from any fault or negligence contributing to the collision; that the defendant company's train dispatcher for the division of the road on which the collision occurred was likewise without blame; and that the disaster was occasioned solely by the neglect of the defendant's telegraph operator at Springdale to communicate to the conductor and engineer of freight train second 38 the fact that an order had been received directing that train to meet the south-bound freight train at Springdale instead of meeting it at Rogers. The question to be decided, therefore, lies within a narrow compass, the question being whether, under the aforesaid statute, Furry, the fireman, and the telegraph operator at Springdale, were fellow servants, as the defendant company contends, or whether, by reason of the statute, they cannot be regarded as occupying that relation; this latter being the view which was entertained by the trial court. In the decision of this question, which turns entirely upon the construction of the local statute and a consideration of the purpose which underlies it, it will not aid materially to consider what would be the relation of the two employés in the absence of the statute. We accordingly pretermit any discussion of that question, being willing to concede, as counsel for the defendant in error concede, that but for the statute they would

be fellow servants, within the federal adjudications on that subject and according to the doctrine which formerly prevailed in the state of Arkansas. The question now is, what rule did the legislature which enacted this statute intend to prescribe? What was the purpose of the enactment? When that purpose is discovered our duty is to give the statute the effect which it was intended to have, instead of nullifying it by construction.

It is well known to the profession that the fellow-servant doctrine, so termed, which was first enunciated in Priestly v. Fowler, 3 Mees. & W. 1, and in this country in Farwell v. Railway Corp., 4 Metc. (Mass.) 49, 38 Am. Dec. 339, and in Murray v. Railway Co., 1 McMul. 385, 36 Am. Dec. 268, although generally followed in the United States, has been applied, in some states, with important qualifications not recognized in other states. For example, it was early held in some states, and the rule is still adhered to, that persons in the employ of the same master are not fellow servants, although the labor that they respectively perform tends to the accomplishment of the same general object or enterprise which the employer has in view, provided they work in different departments of the service and do a different kind or class of work, which does not bring them into habitual association with each other. This qualification had become ingrafted, in several states, on the fellow-servant doctrine, as it was first enunciated, prior to the adoption of either the Arkansas or Texas statute. Railroad Co. v. Moranda, 93 Ill. 302, 34 Am. Rep. 168; Stafford v. Railroad Co., 114 Ill. 244, 2 N. E. 185; Railroad Co. v. Snyder, 117 Ill. 376, 7 N. E. 604; Cooper v. Mullins, 30 Ga. 150, 76 Am. Dec. 638; Railroad Co. v. Collins, 2 Duv. 114, 87 Am. Dec. 486; Madden's Adm'r v. Railway Co., 28 W. Va. 610, 621, 57 Am. Rep. 695; Railroad Co. v. De Armond, 86 Tenn. 73, 78, 5 S. W. 600, 6 Am. St. Rep. 816. The fellow-servant doctrine had also undergone a further modification in several states, prior to 1893, by the adoption in those states of what is known as the superior servant rule, in virtue of which two employés of the same master are not regarded as fellow servants if one is placed in a position of subordination under the other and is subject to his orders and control in such a way that the one exercising the power of control may reasonably be regarded as exercising the functions of the master. This doctrine once met with the approval of the supreme court of the United States (Railroad Co. v. Ross, 112 U. S. 377, 5 Sup. Ct. 184, 28 L. Ed. 787), and is upheld in many judicial opinions, as will appear by a reference to the cases cited under section 43 of McKinney, Fel. Serv. In view of the great contrariety of opinion prior to 1893, and the strong disposition manifested at that time, in some quarters, to modify the fellow-servant doctrine as at first enunciated, and in view of the fact that it had been modified in some states in the respects above mentioned, we have no doubt that it was the intention of the legislature of the state of Arkansas, when it enacted the statute above quoted, to adopt the departmental limitation of the fellow-servant doctrine, as well as the superior servant rule, to the full extent that these doctrines were then recognized in other states. No other reasonable view of the purpose of the lawmaker, in our judgment, can well be taken. Arkan-

sas was one of the states whose courts, up to the time that this statute was enacted, had declined to adopt the departmental limitation or the superior servant doctrine. Railway Co. v. Triplett, 54 Ark. 289, 298, 15 S. W. 831, 16 S. W. 266; Fones v. Phillips, 39 Ark. 17, 43 Am. Rep. 264; Railway Co. v. Shackelford, 42 Ark. 417, 420. The legislature evidently proposed to effect some change in the law as it had been previously declared and enforced by the courts of that state, as otherwise there was no need of further legislation; and our conclusion, based upon the aforesaid considerations, as well as upon the language of the statute itself, is that it intended to adopt the superior servant rule, also to approve and adopt the departmental limitation of the fellow-servant doctrine.

It follows from what has been said that, in determining whether Furry and the telegraph operator at Springdale were fellow servants within the meaning and intent of the Arkansas statute, we must perforce give special weight to the adjudications in those states that have adopted both of the modifications of the fellow-servant doctrine above mentioned. Our attention has only been directed to one case (Railroad Co. v. Becker, 67 Ark. 1, 53 S. W. 406, 409, 46 L. R. A. 814, 77 Am. St. Rep. 78), where the local statute has been referred to at length and construed by the supreme court of the state of Arkansas, whose construction of the statute, as a matter of course, is binding upon this court. In that case the question arose whether a fireman on an engine and an inspector and repairer of engines at a divisional point were fellow servants within the terms of the statute. It appeared that when the engine on which the fireman worked was at the roundhouse, where the inspector was stationed, he and the inspector were under the orders of the roundhouse foreman in the mechanical department, and that both had certain duties to perform with respect to the engine; but while the fireman was on the road, he was in the operating department, although even then he was subject to be discharged by the roundhouse foreman. With reference to their relation the court said:

"When Becker [the fireman] was at Thayer [the divisional point], his and Johnson's duties were different, and were not such as to associate and bring them together in their work, except casually, when they might work on Becker's engine at the same time, Becker cleaning and Johnson inspecting or repairing. They could not be said to have been working together, except when and so long as they were so casually engaged. Their working together was not sufficient to constitute them associates in labor any longer than it continued, no more than the casual meeting of individuals for short periods of time could constitute them associates. As they were not working together in the same department at the time the accident occurred, it follows that they were not fellow servants at the time when Becker was injured."

This extract from the opinion is important, in that it clearly indicates that, as the statut⁺ is understood and interpreted by the court which delivered the opinion, persons employed by a railroad corporation in the state of Arkansas are not fellow servants unless they habitually work together, that is, in juxtaposition, to a common purpose, nor unless they are employed in the same department. The language of the statute undoubtedly warrants this construction, because in one paragraph it declares that those are fellow servants "who are engaged

in the common service * * * and * * * are working together to a common purpose," while the proviso to the same section declares that "nothing herein contained * * * shall be so construed as to make employés * * * fellow servants with other employés * * * engaged in any other department or service." Better language than this could hardly have been chosen to formulate the doctrine which prevails in Illinois, sometimes termed the "doctrine of consociation"; namely, that two persons in the service of the same master are not to be esteemed fellow servants unless their duties are such as to bring them into habitual association with each other, so that they will exercise a mutual influence upon each other, tending to inspire caution and insure each other's safety. Steel Co. v. Shields, 134 Ill. 209, 213, 25 N. E. 569; Railway Co. v. Moranda, 93 Ill. 302, 315, 34 Am. Rep. 168.

Turning to decisions in the state of Texas, which was the first to adopt the Arkansas statute, and whose decisions upon the act must, for that reason, be regarded as very persuasive, we find it to be held (Railway Co. v. Whitlock [Tex. Civ. App.] 41 S. W. 407) that an engineer on a road engine who ran his engine into a yard that was under the control of a yardmaster, for the purpose of taking out a train which had been made up, and who was injured by reason of the negligence of those employés in the yard whose duty it was to make up trains, might recover against his company, because the persons working in the yard, under the direction of the yardmaster, were not fellow servants of the engineer, although, when the latter came into the yard with his engine, he passed, for the time being, under the jurisdiction of the yardmaster. This decision was based on the ground that the engineer and the persons employed in the yard were not "working together to a common purpose" in the statutory sense. In another case (Railway Co. v. Harding [Tex. Civ. App.] 33 S. W. 373), it was held that an engineer on a road locomotive, who was under the control of the yardmaster, and who ran into a railroad yard and was there injured, was not a fellow servant of employés in the yard, who were under the supervision of the yardmaster, because they did not work in the same department, and for the further reason that the engineer of the road engine and the yard men were not working together to a common purpose. It has also been held in that state that a member of a day crew, who were employed to unload ties which the members of a night crew removed, and who was injured by the falling of certain ties which the night crew had negligently left standing, was not a fellow servant of the members of the night crew, because they were not working together at the same time and place and to a common purpose. Railroad Co. v. Echols (Tex. Civ. App.) 41 S. W. 488, 491. See also Railroad Co. v. Talley (Tex. Civ. App.) 39 S. W. 206; Masterson v. Railway Co. (Tex. Civ. App.) 42 S. W. 1001; Railway Co. v. Warner (Tex. Sup.) 35 S. W. 364.

Our attention has been directed to the fact that the words "working together," as employed in the Arkansas statute, are supplemented in the Texas statute (vide Laws Tex. 1893, p. 120), by the further words "at the same time and place"; but we are not able to regard

this change of phraseology as warranting a different interpretation of the two statutes. It is most likely that the words "working together to a common purpose" were regarded as expressing the same rule intended to be expressed by the Texas statute, in a more concise form.

It is a circumstance worthy of notice that before the Arkansas statute was adopted it had been held in those states like Illinois, which accepted the fellow-servant doctrine only in a modified form, that a section man working on a railroad was not in the same department as a fireman or engineer, and hence that the two were not fellow servants (Railroad Co. v. Moranda, 93 Ill. 302, 34 Am. Rep. 168; Railroad Co. v. Erickson, 41 Neb. 1, 59 N. W. 347, 29 L. R. A. 137); that a station agent is not in the same department as a conductor (Railroad Co. v. Snyder, 117 Ill. 376, 7 N. E. 604); and that a telegraph operator and an engineer are not in the same department, and hence are not fellow servants (Madden's Adm'r v. Railroad Co., 28 W. Va. 610, 621, 57 Am. Rep. 695; Railroad Co. v. De Armond, 86 Tenn. 73, 78, 5 S. W. 600, 6 Am. St. Rep. 816). In a recent case decided by the supreme court of the state of Tennessee, it is held that a conductor of a freight train, who assists in switching cars at a station, is not a fellow servant of the station agent, because they are employed in different departments of the service. Railroad Co. v. Jackson (Tenn.) 61 S. W. 771. Moreover, it has been decided in Ohio, which has adopted a statute somewhat like the Arkansas statute, defining who are fellow servants, that, when the act speaks of "departments or branches of service," the term "department" should not be limited so as to include only those large divisions of work which may be created by a railroad company for its own convenience, but that the terms should be understood to refer to those more minute subdivisions of the work "which concern the daily duties of the employés"; and in accordance with that view it was held by the supreme court of Ohio that an engineer of one train was in a separate branch or department of the company's service from a brakeman of another train belonging to the same company. Railroad Co. v. Margrat, 51 Ohio St. 130, 37 N. E. 11, 14. See also Railroad Co. v. Warner (Tex. Sup.) 35 S. W. 364, 366, wherein it was said by the supreme court of Texas, "The words 'department' or 'service' [as used in the statute of that state] merely mean a subdivision of business, as running a train, clearing away a wreck, repairing a track," etc.

Without pursuing the subject at any greater length, we are forced to conclude that Furry and the defendant's telegraph operator at Springdale, by whose fault the collision was occasioned, were not fellow servants, because, within the meaning of the Arkansas statute, they were not "working together to a common purpose"; the work which they did being of an entirely different character, which only brought them together casually. We are also disposed to think that the two employés were not engaged in the same "department or service" of the corporation, within the true intent of the statute. As this was substantially the view which was entertained by the trial court, the judgment below is affirmed.

SANBORN, Circuit Judge (dissenting). I am unable to assent to the views expressed or the conclusion reached by the majority of the court, because in my opinion the local telegraph operator and the fireman were within the true meaning of the statute of Arkansas "working together to a common purpose,"—the purpose of operating the trains of the company,—and were engaged in the same "department or service," namely, the operating department or service, when the accident occurred. These are the reasons which have forced my mind to this conclusion:

1. The Arkansas statute was enacted in 1893. The terms "department" and "service" in that statute are obviously interchangeable, and have the same meaning. One who is in the same department is in the same service, and vice versa. The ordinary, usual, and accepted meaning of the term "department" in the state of Arkansas, when the statute was passed, as applied to the business of a railroad company, was one of the great natural divisions of that business, such as the operating department, the auditing department, or the legal department. It is probably not too venturesome a statement to say that, if all the people of that state had been separately requested to state the meaning of this term, more than 95 per cent. of those who answered at all, legislators and constituents alike, would have thus defined it. To the same extent the usual and accepted meaning of those employés who were "working together to a common purpose" for the same master was those who were working in the same department or service to accomplish the common end of the business of that department, to operate the railroad, to audit its accounts, or to protect the legal rights of the company.

2. This was the authoritative legal definition and meaning of these terms when this statute was enacted, a definition and a meaning which the decisions of the supreme court of the United States had expressly ascribed to them, while a decision of the supreme court of Arkansas had as clearly repudiated the theories of the courts of Illinois, Georgia, Kentucky, Tennessee, and Texas on this subject, which the majority now invoke. Railroad Co. v. Baugh, 149 U. S. 368, 384, 389, 13 Sup. Ct. 914, 37 L. Ed. 772; Railway Co. v. Triplett, 54 Ark. 289, 295, 296, 15 S. W. 831, 16 S. W. 266; Railway Co. v. Conroy, 175 U. S. 323, 337, 20 Sup. Ct. 85, 44 L. Ed. 181; Railway Co. v. Peterson, 162 U. S. 346, 355, 16 Sup. Ct. 843, 40 L. Ed. 994; Oakes v. Mase, 165 U. S. 363, 364, 17 Sup. Ct. 345, 41 L. Ed. 746; Railway Co. v. Hambly, 154 U. S. 349, 357, 14 Sup. Ct. 983, 38 L. Ed. 1009; Railway Co. v. Frost, 21 C. C. A. 186, 74 Fed. 965, 967; Railway Co. v. Camp, 13 C. C. A. 233, 65 Fed. 952–964; McKaig v. Railway Co. (C. C.) 42 Fed. 288–291; Wright v. Railway Co. (C. C.) 80 Fed. 261. The supreme court of the United States had said:

"All enter into the service of the same master, to further his interests in the one enterprise. Each knows when entering into that service that there is some risk of injury through the negligence of other employés, and that risk, which he knows exists, he assumes in entering into the employment. * * * That the running of an engine by itself is not a separate branch of service seems perfectly clear. The fact is, all the locomotive engines of a railroad company are in the one department,—the operating department;

and those employed in running them, whether as engineers or firemen, are engaged in a common employment, and are fellow servants." Railroad Co. v. Baugh, 149 U. S. 384, 389, 13 Sup. Ct. 914, 37 L. Ed. 772.

The supreme court of Arkansas had carefully considered and repudiated the theories of departments and consociation promulgated by the courts of Illinois, Georgia, Kentucky, and Tennessee, because, as that court said, "it leads to confusion and possible absurdities." Railway Co. v. Triplett, 54 Ark. 289, 295, 15 S. W. 831, 16 S. W. 266.

3. When the statute was passed there was no definite meaning to the terms in question other than that ascribed to them by the supreme court and generally accepted. The decisions in Illinois, Georgia, Kentucky, Tennessee, and Texas on this subject are inconsistent, confused, and irreconcilable. No rational definition of those "working together to a common purpose" or of the "same department or service" can be conceived that will reconcile them. Witness the decisions that an engineer of one train is not in the same department as a brakeman of another train employed by the same company (Railroad Co. v. Margrat, 51 Ohio St. 130, 37 N. E. 11); that an engineer who runs his engine into a yard where the other employés in the yard are engaged with him under the direction of the same yardmaster in making up his train was not "working together to a common purpose" with them (Railway Co. v. Whitlock [Tex. Civ. App.] 41 S. W. 407); and that the members of a day crew and the members of a night crew engaged in unloading ties were not working together at the same time and place to a common purpose (Railroad Co. v. Echols [Tex. Civ. App.] 41 S. W. 488, 491). In view of these decisions would not two men engaged under the same master in unloading cord wood by each lifting and removing a stick alternately be in different departments working to different purposes, because they would not both be engaged in unloading the same stick at the same time? It seems to me extremely improbable that the legislature of Arkansas left the authoritative legal definition and the usual and accepted meaning in that state of the two terms it used in this statute, wandered into other states, and adopted the confusing and uncertain conceptions of their meaning disclosed in these decisions in Illinois, Georgia, Kentucky, Tennessee, and Texas,—conceptions so impracticable that the courts of the states of Virginia and West Virginia, which once attempted to follow and enforce them, have reversed their rulings and repudiated them. Jackson v. Railway Co., 43 W. Va. 381, 27 S. E. 278, 31 S. E. 258, 46 L. R. A. 337; Railroad Co. v. Nuckol's Adm'r, 91 Va. 193, 21 S. E. 342.

4. When this statute was enacted, then the ordinary, commonly accepted meaning in Arkansas, and the authoritative legal definition there, of the term "department," as applied to a railroad company, was: "One of the great divisions of its business; such as the operating department, the auditing department, the legal department,"—and the ordinarily accepted and the legal meaning of the term, "those employed by the same master, working together to a common purpose," was: "Those working together to accomplish the common end sought to be attained in the department in which they were em-

ployed." In the absence of other definitions in the legislation of a state, the legal presumption is that the legislature used and intended to use the words and terms found in a statute in their usual sense at the time and place that the legislation was enacted. Corning v. Board, 42 C. C. A. 154, 157, 102 Fed. 57, 60. This statute gives no other definition of the words or terms in question,—no evidence of any intention of the legislature to change or modify their accustomed meaning; and the ordinary presumption of law is strengthened by the fact that the authoritative legal definition of the terms was the same as their commonly accepted meaning. These considerations persuade me to believe that the legislature intended to use, and did use, them in this sense in this statute.

5. Indulging for a moment the permissible assumption that this local telegraph operator and this fireman were working in their respective positions on the day this statute became a law, they were, just before it was enacted, "working together to a common purpose," the purpose of operating the railroad, in the same "department or service," the operating department or service, and they were fellow servants. Railroad Co. v. Camp, 13 C. C. A. 233, 65 Fed. 952, 954; Railway Co. v. Clark, 6 C. C. A. 281, 57 Fed. 125; Railway Co. v. Frost, 21 C. C. A. 186, 74 Fed. 965, 967. The statute was passed, but it did not change their relation. It nowhere asserted or intimated that they should not continue to be "working together to a common purpose." On the other hand, it expressly declared that those who were "working together to a common purpose" were fellow servants; and the operator and the fireman were so working. Is not the conclusion irresistible that they continued to be fellow servants? And as they were working in the same way and to the same purpose when the accident occurred, they were then fellow servants, by the express declaration of this statute. Continuing the indulgence of the assumption, these men were in the same department or service when the law passed, and there was nothing in it to divide their department or service, or to place them in different departments or different services. The only suggestion the statute contains on this subject is a proviso that "nothing herein contained shall be so construed as to make employés * * * fellow servants with other employés * * * engaged in any other department or service." This proviso had no application to these men, because they were in the same department or service, and were fellow servants, when it was passed. They were in the same department or service when the accident occurred, and neither the proviso nor the statute itself affected their relations to each other or to their master in this regard. For the reasons which have now been stated, this telegraph operator and this fireman were, in my opinion, fellow servants, within the true intent and meaning of the statute of Arkansas, when the fireman was injured, and the judgment below should be reversed upon that ground.