117 376
27a 477
117 376
128 657
117 376
131 563
117 376
133 261
134 213
117 376
152 467
152 591
155 634
45a 641
117 376
54a 390
117 376
70a 334
117 376
88a 656
117 376
90a 5644
117 376
193 3177
117 376
s128 655
100a 1511
d101a4 49
117 376
d198 3293
d198 4293

The Chicago and Northwestern Railway Company *et al.*

*v.*

Mary A. Snyder, Admx.

*Filed at Ottawa June 12, 1886.*

1. Negligence—*contributory negligence to defeat recovery—as, where a conductor fails to bring his train to a stop on approaching a crossing— or fails to await a signal.* Where a conductor of a railway train fails to have the same brought to a stop not less than two hundred feet before reaching a crossing of another railroad, as required by the statute, and such failure contributes to a collision with a train on the other road, causing the death of the conductor so neglecting his duty, no recovery can be had by his personal representative. If the injury might have been avoided by his bringing his train to a full stop the proper distance, before reaching the crossing, no recovery can be had, although the agent of both roads at the crossing may have been guilty of negligence in signaling the several trains when to pass.

2. And where, it was the duty of the conductor killed, to hold his train until the proper signal was given for him to make the crossing, and the signal was given for the train on the other road to cross, and while it was in the act of crossing, such conductor negligently failed to observe the signal, and undertook to make the crossing in disregard of such signal, which was well understood, whereby a collision occurred resulting in the conductor's death, it was *held,* that no recovery could be had in an action by his personal representative against either of the railway companies whose trains collided.

3. Same—*fellow-servants—injury from negligence of a fellow-servant— as exempting common master from liability—and who are fellow-servants.* Where a conductor of a train is killed by a collision of two trains at the intersection of two railroads, in consequence of the negligence of the station agent in giving signals when the several trains might pass with safety, no recovery can be had by his personal representative, if his co-employes in charge of the train under him were guilty of negligence which contributed to his death.

4. In order to exempt a master from liability on account of injuries sustained by one of his servants or employes, resulting from the negligence of another one of his servants, the two servants must be co-employes directly operating with each other in a particular business, in the same line of employment, or their usual duties must bring them habitually together, so that they may exercise a mutual influence upon each other promotive of proper caution.

5. Instructions—*assuming there was negligence—and whether an instruction does so assume.* In an action against a railway company to recover for an injury alleged to have been caused by the negligence of the defendant's servant in the discharge of his duty, an instruction assuming as true the neg-

ligence of such servant, would be erroneous. In such case it is for the jury to find, from the evidence, whether such servant was guilty of the imputed negligence, as a question of fact; and it is not within the province of the court to direct the jury that any person was negligent, or assume the negligence of any one alleged to be responsible for the injury.

6. In such case, when the injury is charged to be the result of negligence of an agent of the defendant companies in operating a semaphore, or signal, at the intersection of the two roads, a clause in an instruction for the plaintiff, that "if the jury find, from the evidence, that said collision occurred solely by reason of gross negligence of one N. E. T. (the agent) in operating the semaphore," was held not open to the objection that it assumed as true the negligence of such agent.

7. SAME—*giving undue prominence to particular facts—and whether an instruction is liable to such objection.* Where the evidence is conflicting, it is improper to select isolated portions of the evidence, and give them prominence, by calling the attention of the jury especially to them. But an instruction which in substance informs the jury that if they find, from the evidence, the facts alleged in the declaration, and relied upon as proved, (reciting them,) their verdict should be for the plaintiff, is not liable to the objection of selecting and giving undue prominence to isolated parts of the evidence.

8. The court should always instruct the jury, that if they find the facts involved in the issue are proved, (reciting them,) then they should find for the party in whose favor they shall find the facts. This is not giving undue prominence to any particular fact.

9. SAME—*omitting to require a finding as to a material allegation in issue.* In an action against two railway companies to recover for the death of a conductor caused by a collision of trains at the intersection of the two roads, the declaration alleged that the deceased conductor, and those engaged with him under his supervision in the management of the train, were in the exercise of due care at the time of the injury. The court instructed the jury, that if they found, from the evidence, that the collision occurred solely by reason of the gross negligence of the station agent, whose duty it was to give signals, and that the deceased was exercising due and proper care and diligence, then the plaintiff might recover: *Held,* that the instruction was erroneous, in omitting to require the jury to find, from the evidence, whether the engineer and others engaged in operating the train were free from negligence, or were exercising due care at the time.

10. SAME—*one explaining all the others.* Where the court, in its first instruction, told the jury that they should not regard anything contained in any of the instructions as intimating, in the slightest degree, any opinion of the court as to what any of the facts were, but they should determine from the evidence, and from that alone, what were the facts, it was *held,* a qualification of every instruction in the case, and in such plain words that no jury of ordinary intelligence could be misled.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. Joseph E. Gary, Judge, presiding.

Mr. W. C. Goudy, for the appellant the Chicago and North-western Railway Company:

While the definition of fellow-servant is a question of law, whether they were so operating or consociating is a question of fact for the jury. *Railroad Co.* v. *Morgenstern,* 106 Ill. 220; *Railway Co.* v. *Moranda,* 108 id. 581.

The master is not liable for the injury of a servant ·produced by the neglect of a fellow-servant in the same line of employment. *Railway Co.* v. *Moranda,* 93 Ill. 302; 108 id. 582; *Abend* v. *Railroad Co.* 111 id. 210; *Ryan* v. *Railway Co.* 60 id. 171; *Railroad Co.* v. *Ross,* 112 U. S. 377.

The declaration alleges that Snyder, and those engaged with him in the management of the said engine and car, were exercising due care and diligence, and this was necessary to make a good declaration. Then, if Snyder was injured by the gross neglect of the men under his immediate control, he could. not recover, although there might have been mismanagement of the semaphore by Torrence. The court ignored this element in the case. In the third instruction the jury were informed that if Snyder alone was in the exercise of due and proper care, caution and diligence, as such conductor, in and about the control and management of said way car and engine, he was within the rule of law requiring the plaintiff to be free from neglect contributing to the injury. The engineer and brakeman should have been included in this instruction.

Mr. E. Walker, for the appellant the Chicago, Milwaukee and St. Paul Railway Company:

If we are right as to the plaintiff's evidence that the negligence of Snyder and his co-employes materially contributed to the injury, the court should have excluded all the evidence

and directed the jury to find for the defendant. *Abend* v. *Railroad Co.* 111 Ill. 202.

The failure of Snyder and his co-employes to stop their train three hundred feet west of the crossing, as required by the rules of the company, or two hundred feet, as required by the statute, is *prima facie* negligence. *Railroad Co.* v. *Loomis,* 13 Ill. 548; *Railroad Co.* v. *Geddes,* 33 id. 305; *Railroad Co.* v. *Elmore,* 67 id. 176; *Railroad Co.* v. *Railroad Co.* 72 id. 34.

Appellee's third instruction is erroneous. It assumes as true the most important fact in controversy,—the negligence of Torrence, charging him even with gross negligence. It also sums up all the facts on which the plaintiff seeks to recover, giving them undue and unfair prominence before the jury, and omits to state the facts in defence. *Pennsylvania Co.* v. *Stoelke,* 104 Ill. 201; *Moore* v. *Wright,* 90 id. 470; *Railroad Co.* v. *Sykes,* 96 id. 162; *Village of Warren* v. *Wright,* 103 id. 298; *Logg* v. *People,* 60 id. 602.

The court erred in refusing defendant's second and fourth instructions, based upon the negligence of the deceased con-contributing to the injury.

Mr. Mason B. Loomis, and Mr. Louis Munson, for the appellee:

The appellee's third instruction does not assume the negligence of Torrence, or that of any one. (*Mullen* v. *Spangenberg,* 112 Ill. 143.) If there were any doubt on this point, it is removed by the disclaimer of the court in the first instruction. (*Kennedy* v. *People,* 40 Ill. 488.) It does not single out certain facts into unfair prominence. *Trask* v. *People,* 104 Ill. 569; *Frame* v. *Badger,* 79 id. 441.

Instructions should be taken as a series. One defective instruction can be cured by another which states the principle correctly. *Town of Vinegar Hill* v. *Busson,* 42 Ill. 45; *Stowell* v. *Beagle,* 79 id. 525; *Railroad Co.* v. *Ingraham,* 77 id. 309; *Warren* v. *Dickson,* 27 id. 115.

The stopping and the place of stopping the train was a matter entirely within the engineer's control. Even if the engineer's negligence contributed to the injury, it would be no defence. *Railway Co.* v. *Cummings,* 106 U. S. 700; *Chicago* v. *Sheehan,* 113 Ill. 661.

Torrence was not a fellow-servant in the same line of duty as Snyder. *Railroad Co.* v. *Moranda,* 93 Ill. 302; *Rolling Mill Co.* v. *Johnson,* 114 id. 64; *Railroad Co.* v. *McLallen,* 84 id. 109; *Railroad Co.* v. *May,* 108 id. 288; *Railroad Co.* v. *Stevens,* 20 Ohio, 415; *Railway Co.* v. *Keary,* 3 Ohio St. 201; *Railroad Co.* v. *Ross,* 112 U. S. 377. See, also, 45 Ill. 197; 74 id. 341; 61 id. 102; 77 id. 391.

Mr. Justice Craig delivered the opinion of the Court:

This was an action brought by Mary A. Snyder, administratrix of the estate of John H. Snyder, deceased, against the Chicago and Northwestern Railway Company, and Chicago, Milwaukee and St. Paul Railroad Company, to recover damages caused by the death of her husband, who was killed on the 7th day of October, 1882, by a collision of two trains of said defendants, at a crossing near Western avenue, in Chicago.

It is averred, in substance, in the declaration, that the two defendants are corporations owning and operating lines of railroads, that cross and intersect each other at grade in the city of Chicago; that said companies maintained at such crossing a joint agent, who was in the joint employment of both companies, whose duty it was to regulate, direct and control the passing of all locomotive engines and cars over said crossing, so as to prevent accidents, by means of certain signals well understood by and known to all the agents and employes of the said companies, and that it was the duty of such employes to observe the signals; that John H. Snyder was a conductor in the employ of the Chicago and North-

western company, having the charge of a certain locomotive engine, and car thereto attached, belonging to said last named company; that at the time of the alleged injury, Snyder was in charge of and upon a certain train of cars and engine, and that he, and those engaged with him in the management of said train, were in the exercise of due care and diligence, observing the proper signals made by the joint agent or employe at said crossing, directing the said Snyder, as such conductor, to approach and pass over the said crossing with his said train of cars, and that after Snyder had approached within so short a distance of said crossing that it was impossible to stop his engine, the said joint agent, without due care, reversed or changed his signal, thereby directing a locomotive engine, and train of cars thereto attached, belonging to the said Chicago, Milwaukee and St. Paul company, to pass over said crossing, and that in consequence of such signal said trains collided at said crossing, causing the injury to and death of said Snyder. In the second count it is averred that Torrence, the joint agent of the defendants, so carelessly, negligently and improperly operated and controlled the semaphore, and the engine and. car of the Northwestern company, and the train of the St. Paul company, that, without the fault or negligence of Snyder, or those under his direction, there was a collision, by which Snyder was killed. To the declaration the defendants pleaded the general issue, and on a trial of the cause in the Superior Court of Cook county, the plaintiff recovered a judgment for $5000, which, on appeal, was affirmed in the Appellate Court.

No question has been raised in regard to the decision of the court in the admission or exclusion of evidence, but it is claimed that the court erred in giving plaintiff's third instruction, and in refusing instructions Nos. 2, 4 and 5, asked in behalf of the St. Paul company, and instruction No. 6, asked by the Northwestern company.

The third instruction given for the plaintiff was as follows :

"The jury are instructed that if they find, from the evidence, that John H. Snyder, the deceased, was injured by a collision of the cars of the Chicago, Milwaukee and St. Paul Railroad Company, and the Chicago and Northwestern Railway Company, the defendants in this case, at the crossing of the railroad tracks of the said companies, in the city of Chicago, on or about the 7th day of October, A. D. 1882, and that by reason of such injuries, he, the said John H. Snyder, afterwards, on the same day, died; and if the jury further find, from the evidence, that said collision occurred solely by reason of the gross negligence of one H. E. Torrence, in and about the management and operating of the semaphore or signal light, at or near said crossing, and that at the time of such collision and injury, he, the said H. E. Torrence, was in the joint employment of the two defendant companies in and about the management and operation of said semaphore or signal light; and if the jury further find, from the evidence, that at the time of such collision and injury the said John H. Snyder was a conductor in the employ of the Chicago and Northwestern Railway Company, one of the defendants, having the control and management of the way car and engine of said last named company in question, and was, at the time aforesaid, exercising due and proper care, caution and diligence, as such conductor, in and about the control and management of said way car and engine, and for his own personal safety, and that at and before the time of said collision and injury, the said John H. Snyder and H. E. Torrence were employed in different departments of labor, wholly disconnected with each other, and were not associated with each other in the performance of their respective employment, and could have no control over or influence upon the conduct of each other; and if the jury further find, from the evidence, that the said John H. Snyder left surviving him a widow, who is still living, and that such widow was pecuniarily injured by

reason of the death of the said John H. Snyder, as aforesaid, and that such widow is the plaintiff herein, and was, at the time of the commencement of this suit, the administratrix of the estate of the said John H. Snyder, deceased,—then the jury should find both of the defendants guilty, and should give to the plaintiff such damages as, from the evidence, the jury shall deem a fair and just compensation for the pecuniary injury, if any, resulting from such death to the said widow, not exceeding the sum of $5000."

Several objections have been made to this instruction,— first, that it assumes as true the negligence of Torrence. If the instruction was liable to the objection urged, it would certainly be erroneous, because it was for the jury to determine, from the evidence, who had been guilty of negligence, and it was not within the province of the court to direct the jury, in the instructions, that any person was negligent, or assume as a fact, in the instructions, the negligence of Torrence or any of the parties alleged to be responsible for the accident. That the collision of the trains, resulting in the death of Snyder, occurred through the negligence of some one, was a fact over which there was no controversy. It was for the jury to determine, from the evidence, who had been guilty of the negligent act. The language of the instruction complained of is: "If the jury find, from the evidence, that said collision occurred solely by reason of gross negligence of one H. E. Torrence in operating the semaphore," etc. No reasonable construction of this language could convey the idea to the minds of the jury that any one was negligent; but on the other hand, the jury was in plain terms informed that such fact must be found by them, from the evidence. But if there was any doubt in regard to the construction of the language used, the jury could not be misled, as the court, in the first instruction given, informed the jury that they should not regard anything contained in any of the instructions as intimating, in the slightest degree, any opinion of the court as to what any of the facts are, but they

should determine from the evidence, and from that alone, what are the facts. This was a qualification of every instruction on that branch of the case, and in such plain words that no jury of ordinary intelligence could be misled.

The second objection to the instruction is, that it sums up all the facts on which plaintiff sought to recover, giving them undue and unfair prominence, and omits to state the facts in the defence. The instruction is somewhat lengthy, and may be liable to criticism for that reason; but that is not the point, —the question is, whether it is erroneous. This court has held, in several cases, that where the evidence is conflicting, it is improper to select isolated portions of the evidence and give them prominence, by calling the attention of the jury especially to them, in an instruction. But we do not regard this instruction liable to this objection. The instruction, in substance, informed the jury that if they should find, from the evidence, the facts alleged in the declaration and relied upon, as proven, reciting them, then the verdict should be for plaintiff. Such an instruction was approved in *Frame* v. *Badger*, 79 Ill. 442, where it is said: "The court should always instruct, that if the facts involved in the issue are proved, reciting them, then they should find for the party in whose favor they shall find the facts." Here no prominence is given to any particular fact in the case, but the jury are merely directed that if they find, from the evidence, the facts relied upon by the plaintiff have been proven, reciting them, then the plaintiff may recover. We perceive no valid objection to an instruction of this character.

There is, however, one serious objection to the instruction. It will be observed that it is averred, in both counts of the declaration, that Snyder and those engaged with him in the management of the train were in the exercise of due care, but by the instruction the jury were directed that if they find, from the evidence, that the collision occurred solely by reason of gross negligence of Torrence, the plaintiff might

recover, if the jury further find, from the evidence, that Snyder was exercising 'due and proper care, caution and diligence as conductor of the train. Under this part of the charge to the jury, the engineer and brakeman in charge of the train, under Snyder, may have been guilty of gross negligence in the discharge of their respective duties, which may have contributed to Snyder's death, and yet the plaintiff could recover. We do not understand this to be a sound proposition of law. If Snyder's co-employes in charge of the train under him were guilty of negligence which contributed to his death, he is chargeable with such negligence, and the negligence of those under Snyder would defeat a recovery. Suppose the brakeman had notified the engineer that they were signaled not to cross, in ample time to enable him to stop the train, but he refused to regard the notice and recklessly ran into the other train, it will scarcely be pretended that Snyder's representatives could recover.

The court refused an instruction asked by the defendant the Chicago, Milwaukee and St. Paul company, as follows:

"The court further instructs the jury, that the law requires all trains upon any railroad in this State which crosses or intersects, or is crossed by any other railroad, upon the same level, shall be brought to a full stop at a distance not less than two hundred feet nor more than eight hundred feet from the point of intersection or crossing of such road. And if the jury find, from the evidence, that the train of the Chicago and Northwestern Railway Company, under the charge of the deceased, as conductor of said train, was not brought to a full stop at a distance of more than two hundred feet from the crossing of the tracks of the Chicago, Milwaukee and St. Paul Railway Company, and if you further believe, from the evidence, that the failure to stop said train at said distance from said crossing contributed to the injury complained of, or if you believe, from the evidence, that had said train been brought to a full stop at said distance from said crossing

25—117 Ill.

the collision would have been avoided, then you must find for the defendant the Chicago, Milwaukee and St. Paul Railway Company."

At the place where the collision occurred, resulting in the death of Snyder, the Chicago and Northwestern railway runs east and west. The Chicago, Milwaukee and St. Paul railroad runs south-easterly, crossing the Northwestern tracks at an angle. Ninety feet west of the crossing is a signal box, where a semaphore is operated, as is shown by a plat in the record. Torrence had charge of the semaphore, whose duty it was to direct the crossing of all trains on both railroads. When he threw the green light of the semaphore on the track, trains on that road had the right of way, while the red light on the track was a signal for trains not to move. At the time of the accident, which occurred about four o'clock in the morning of October 7, 1882, there were three trains at the crossing: one on the St. Paul road, going west; one on the Northwestern, going west, and the train under the control of Snyder, as conductor, going east. This latter train was last at the crossing, and consisted of an engine, and a way car pushed in front of the engine. There is a conflict in the evidence in regard to the point where Snyder's train was stopped before undertaking to make the crossing. The fireman on the engine thinks that when the stop was made the way car was about even with the semaphore, which would make the stop only ninety feet from the crossing. There was other evidence that the stop was made sooner, and there was also evidence tending to show that the train made no stop before reaching the crossing. But however the fact may be, the evidence was such that the defendants had the right to go to the jury on that question, with proper instructions from the court. There was ample evidence upon which to predicate an instruction like the one in question, and if it contained a correct proposition of law, which it did, it was error to refuse it. The statute imposed the duty on Snyder, who had charge of the train, to bring his train to

a stop not less than two hundred feet from the crossing. If he failed to comply with this requirement of the law, and such failure contributed to the injury, it is plain that the plaintiff could not recover, for the obvious reason that the deceased was guilty of negligence which contributed to the injury. In refusing the instruction, the court in effect held that the defendants were liable, although the jury might find, from the evidence, that if Snyder had observed the duty enjoined by the statute the collision might have been avoided. We do not understand this to be the law.

It is, however, said, that whatever fault there may have been in regard to the failure to stop the train, is to be attributed to the engineer, and that his negligence would be no defence to an injury received by Snyder. The evidence shows that Snyder was the conductor in charge of the train, and that the conductor controlled the movement of the train, which, as we understand it, is always the case. It was therefore his duty to see that the train was stopped at such places as the law required, and if he failed or neglected to perform that duty, it is right that the consequences resulting from such neglect should rest upon him.

The court refused defendants' fourth instruction, as follows:

"If the jury find, from the evidence, that the semaphore signal was first given to the train of the Chicago and Northwestern Railway Company going west, to make such crossing, and that after such train had made the crossing, the semaphore signal was then given to the train of the Chicago, Milwaukee and St. Paul Railway Company to proceed and make the crossing, and was not given to the train of the Chicago and Northwestern Railway Company going east, you will find for the defendant the Chicago, Milwaukee and St. Paul Railway Company."

The west-bound train on the Northwestern road was first at the crossing, and hence had the priority of right to make the crossing over other trains which arrived at a later time,

and there is no dispute in regard to the fact that the proper signal was given this train to make the crossing, which it did. As respects the train going east, upon which Snyder was conductor, it was contended, on the one hand, that Torrence had given the proper signal for this train to cross, and that it was attempting to make the crossing, under the signal given, when Torrence changed the signal, but too late for Snyder to stop his train and avoid the collision; while on the other hand it was contended, that after the west-bound train had gone over the crossing, Torrence at once gave the proper signal to the train on the St. Paul road to cross, which was obeyed by the St. Paul train, and that Snyder negligently failed to observe such signal, and undertook to make the crossing in disregard of such signal. There was evidence introduced on the trial tending to prove that after the west-bound train on the Northwestern road had crossed, the semaphore signal was then given to the St. Paul train to proceed, and that the train under the control of Snyder had no right then to move, and under the pleadings and evidence we see no reason why the instruction was not proper. It may be true, as suggested in the argument, that the semaphore signal to a Northwestern train to cross, might be an invitation to trains to cross going east on the Northwestern road as well as west. But if that be true, such fact does not militate against the instruction, as it is based upon the theory that the Northwestern train going west had crossed, and the signal was changed in favor of the St. Paul road before Snyder's train started to make the crossing.

The refusal of the court to give defendants' sixth instruction is assigned for error. Without entering upon a discussion of this instruction, it is sufficient to say, that a similar instruction was before us in a late case (*Rolling Mill Co.* v. *Johnson,* 114 Ill. 57,) and it was there said: "The ruling of this court requires that the servants of the same master, to be co-employes so as to exempt the master from liability on

account of injuries sustained by one resulting from the negligence of the other, shall be directly coöperating with each other in a particular business in the same line of employment, or that their usual duties shall bring them habitually together, so that they may exercise a mutual influence upon each other promotive of proper caution." We do not regard the instruction as conforming to the ruling indicated, and it was properly refused.

For the error indicated the judgment will be reversed and the cause remanded.

*Judgment reversed.*