## Chicago, Burlington & Quincy Railroad Co. v. Emil J. Eggman, Administrator of the Estate of Benjamin Van Zandt.

1. NEGLIGENCE—*Doing Acts Forbidden by the Employer.*—An employe of a railroad company who is injured and whose injury is the result of his own negligence in doing an act (going under the cars) forbidden by the company, can not recover.

2. MINORS—*When Held to Assume the Hazards of an Employment.*—If a boy is of sufficient age, intelligence and discretion to understand and appreciate the risks to which he is exposed, and if he is informed of the dangerous nature of the work in which he is engaged, he must be held to have assumed the ordinary hazards and perils of such employment.

**Trespass on the Case.**—Death from negligence, etc. Appeal from the City Court of East St. Louis; the Hon. B. H. CANBY, Judge, presiding. Heard in this court at the February term, 1895. Reversed. Opinion filed July 1, 1895.

SWEENEY & WALKER, attorneys for appellant; O. F. PRICE and WISE & McNULTY, of counsel.

A. FLANNIGEN and M. MILLARD, attorneys for appellee.

MR. JUSTICE SAMPLE DELIVERED THE OPINION OF THE COURT.

On the night of the 27th of April, 1893, Benj. Van Zandt, appellee's intestate, then nearly sixteen years of age, had his

right leg crushed by the wheels of a car, in the switch yards of appellant, in East St. Louis, in which yards he was employed as night yard clerk, which injury resulted in his death. The deceased was first employed as messenger boy, in August, 1889, and continued at that work until January, 1891. He was re-employed, as night yard clerk, on October 4, 1892, and continued to fill that position until his injury. He solicited the place, as it paid better than messenger boy, and his parents knew what he was doing. He was a bright boy and filled the position satisfactorily. His duties as messenger boy took him about the yard, so that he was, in a general way, familiar with the situation before his re-employment as night yard clerk. At the time Van Zandt was injured, his duties were to take a record of all cars received from and delivered to connections, card all trains received in, put switch cards on them, take seal record on out-bound trains, and then take the yard, taking the numbers of all cars in the yard that belong north, so that his yard book and the telegraphic report could be made out from that in the morning. He did this by going wherever the cars were in the yard. He would sometimes have to look after a single car. The night he was injured he went out to look after a detached car. There was only one switch engine working in the yard at the time. This was in plain view of him. It was engaged in arranging cars so that those with air brakes would be next to the engine. In doing this it kicked some cars back on the track, which the young man was at the time attempting to cross. He had passed from the south to the north, in order to get the number, etc., of the car that was on the north side. The track was filled with cars and he had crossed from the south to the north by going under the cars, and was returning in the same manner when injured. He said at the time, " I was crawling through under the bumpers and draw bars and the cars moved and one wheel passed over my right leg." The car only moved about three feet, by the concussion caused by the kick.

The negligence charged in the declaration was in the employment of Van Zandt to perform such service when so

young that he did not know or appreciate the danger, and that, having employed him, it became the defendant's duty, first, to instruct and warn him as to the danger of said work; second, to furnish a suitable person to assist him in doing the same; third, to keep such depot and yards sufficiently lighted and in suitable condition, and to so manage and conduct its business at said yards and depot that the said Van Zandt would be reasonably safe in the performance of the work assigned to him, which, it is averred, was not done.

The evidence shows that he was fully instructed and especially warned not to go under the cars; that it was light the night of the injury and he could readily see the operation of the engine, and there is no proof of negligence in the movement of cars. It is undisputed the injury was the result of his own negligence, in doing an act forbidden by his employer. As stated by appellee's counsel, "the important question in this case is whether the boy was old enough to appreciate the dangers incident to the service in which he was engaged." If he was not, he did not assume the risks of his employment. If he was, he did. Hinckle v. Horazdowsky, 133 Ill. 359; Pressed Brick Co. v. Reinneiger, 140 Ill. 338, 343.

He was nearly sixteen years of age. He had been engaged in work about the yards and depot for several years and was as familiar with the conditions and dangers of the service as though he had been twenty-one years of age. Was his judgment sufficiently mature to cause him to appreciate the danger? The danger here was in going under cars that were liable to be moved. Such a danger was patent. It was not like the danger arising from the manipulation of complicated machinery, as in the cases above cited. He was fully capable of performing the work in hand. If so, is not there a presumption that he was also sufficiently intelligent to appreciate instructions in regard to the danger arising from crossing the tracks in the yard? Activity of body and full possession of the senses of sight and hearing, with the ordinary instinct of self-preservation, would ordi-

narily, in one of his age, have secured him from the danger he voluntarily encountered. Familiarity with such incidents may have made him reckless, but that is common to adults as well as minors. He could have climbed over the cars, or by going about one hundred feet west, have gone around them. Doubtless he thought at the time, with his suppleness and activity, that he could more readily and without danger slip under the cars and thus save the trouble of climbing over or going around them. There is nothing in this record to indicate that young Van Zandt did not have the capacity and understanding to appreciate the chances he was taking. The situation did not require the exercise of great mental acumen, but simply the ordinary judgment of one ordinarily capable of taking care of himself under ordinary conditions. The evidence in this case shows Van Zandt was intelligent, and with this had the knowledge and experience that fully apprised him of the danger of his act, against the doing of which he had been enjoined. In the Pressed Brick Company case, *supra*, 337, the court sustained an instruction which told the jury that if a boy is of sufficient age, intelligence and discretion to understand and appreciate the risk to which he is exposed, and if he is informed of the dangerous nature of the work in which he is engaged, then he must be held to have assumed the ordinary hazards and perils of such employment. This law is re-affirmed in Herdman-Harrison Milling Co. v. Spehr, 145 Ill. 334. It is said, however, the jury have passed upon this question of fact, which should conclude this court. After a careful examination of the record, our conclusion is there is no evidence to sustain such a finding. That Van Zandt was intelligent, informed of the dangers and how to avoid them, and was experienced and competent to perform the work for which he was employed, and that his injury was the result of his own recklessness, is indisputably established. Therefore the judgment will be reversed without remanding.

## Finding of Facts.

The court finds the appellee's intestate was night yard clerk for appellant; that his duties required him to take

note of all cars received from and delivered to connecting roads, etc., which duties took him to all parts of the yard; that he was, at the time of the injury, sixteen years of age, was bright and intelligent, had been instructed as to the proper and safe method of performing his duties; that the switch crew were not required to note his going or coming, but that he was to keep out of the way of the engine and to look out for himself; that he was injured while crawling under the coupling between two cars, which act he was forbidden to do; that the injury which resulted from this act was the result of his own negligence.