## Wabash Railroad Co. v. Louis Zerwick, Adm'r.

1. Negligence—*When Willful—Ordinary Care.*—When a defendant is guilty of willful negligence the plaintiff may recover, although not in the exercise of ordinary care.

2. Same—*Speed of Trains.*—Running a train at a prohibited rate of speed is *prima facie* negligence on the part of the company.

3. Ordinary Care—*By One While Disobeying Orders.*—An employe of a railroad company, who sustains an injury as the result of, and while in disobedience of orders and rules of the company, is not in the exercise of that ordinary care for his own safety which his duty, his position as employe, and the surrounding circumstances require.

Trespass on the Case, for personal injuries. Appeal from the City Court of East St. Louis; the Hon. B. H. CANBY, Judge, presiding. Heard in this court at the August term, 1897. Reversed and remanded. Opinion filed March 1, 1898.

GEO. B. BURNETT, attorney for appellant.

JESSE M. FREELS, H. A. LOEVY and WM. WINKELMAN, attorneys for appellee.

MR. JUSTICE WORTHINGTON DELIVERED THE OPINION OF THE COURT.

There are two parallel main tracks, known respectively as the "outbound" and "inbound," from the Relay depot north to Bridge Junction, about three-quarters of a mile in length, owned and controlled by the St. Louis Terminal Railroad Company, and used by appellant and the Big Four companies in operating their trains. They are within the city limits of East St. Louis.

On the 11th of July, 1894, a freight train of the Big Four, on which appellee's decedent, George P. Koons, was rear end brakeman, left the Relay depot between seven and eight o'clock P. M., on the "outbound" track, going north, and stopped at Bridge Junction, a railroad crossing, waiting orders. While on the track there, a Wabash passenger train, which left Relay depot from ten to fifteen minutes after the Big Four freight train, following it on the same track, ran into the caboose at the rear end of the freight train, the collision killing Koons, the rear end brakeman, on the caboose.

The declaration charged wanton and willful negligence, averring that the engineer of the colliding train was incompetent; that the bell was not rung; that a bright light was not kept burning at the head of the locomotive; that it did not stop between 200 feet and 300 feet of the crossing, and that it was run at a great and dangerous speed, to wit, twenty miles an hour, while the ordinance of the city of East St. Louis prohibited a speed greater than ten miles an hour.

Defendant pleaded the general issue. Judgment was recovered for $4,000.

No testimony was offered to prove incompetency on the part of the engineer, or that a bright light was not kept on the forward part of the engine.

Appellant does not controvert the evidence that its train was running faster than ten miles an hour.  It is in evidence that it was running at from fifteen to twenty miles an hour.

At the request of appellant, the court instructed the jury that " the charge in the plaintiff's declaration is a charge of negligence only, and that there is no question before the jury of wantonness or willfulness on the part of defendant's servants for the consideration of the jury."

The effect of this instruction was to take from the jury the issue of wanton or willful negligence.  When such negligence exists, the plaintiff may recover, although not exercising ordinary care.  Wabash R. R. Co. v. Speer, 156 Ill. 251.

The issue of wanton or willful negligence being thus eliminated by the court, the jury must have found that the allegations of ordinary care on the part of the deceased, and of negligence on the part of defendant, as alleged in the declaration, were sustained by the greater weight of evidence.

The testimony shows that the colliding train was running at a prohibited rate of speed.  This is *prima facie* negligence on the part of appellant.  The material question then is, was deceased, at the time he met his death, in the exercise of ordinary care ?

It was his duty as an employe, to take precautions to prevent a collision, and as is shown by the evidence, to be on the rear end of the caboose.  If he neglected his duty and disobeyed orders as to where he should be, and was killed in consequence thereof, he was not in the exercise of ordinary care, although even such disobedience may not have caused the collision.  Abend v. Terre H. & I. R. R. Co., 111 Ill. 208.

We think the evidence plainly shows that his neglect of duty and disobedience of orders was contributory negligence.

There is no proof offered to show that the deceased was in the exercise of ordinary care. All that can be claimed on this point is the presumption that a person will not expose himself to unnecessary risks. There is testimony, uncontradicted, tending to show that he was not exercising ordinary care.

J. D. Bridges, yardmaster of the Big Four, testifies, in substance : "I remember the collision between the Wabash and Big Four freight train. I employed the rear brakeman on that train on the 11th July, 1894. I ascertained from him whether he had any experience in railroading. He said he had. I gave him instructions in regard to what to do. I told this man that was killed, his duties were to go out behind a train that was broken in two anywhere and place a danger signal on the detached part and take the rear end, and do it as quick as he could; and in case he was detained on the main track, to go back as quick as the train stopped and flag any train that might be following them. I told him about going through the terminal yards, and told him the trains followed very closely, and in case the train was detained to get back with the signals as quick as he could, a reasonable distance. He said he understood the duties of flagging."

Upon cross-examination, counsel for appellee read the following rule : "If from any cause a train on these tracks comes to a stop, the flagman must be on the rear end of the rear car and display danger signals to following trains." He then asked : "Now these danger signals were there, as we called them, were they not ?" The witness answered, in substance, that the markers were there. Upon re-direct, he explained : "The markers on the rear end of the train are not the signals referred to in this rule. * * * The danger signal is kept in the caboose, a lantern lit for that purpose, so that when it becomes necessary for him to go back, to flag with that lantern. I told him about the trains following one another very close; and if he stopped, I told him that it was necessary for him to protect the rear end by flagging; that they followed one another at times only half

a minute apart. I told him that his train was carrying signals for another train following, and to watch out for that. An engineer can not always tell from these markers what tracks they are on. The markers are in one sense signals of danger. The purpose of a flagman is to protect the rear end of his train; to go back with signals and protect every train that might be coming behind him."

Joseph Kenney, called for plaintiff, testified in substance: "Am a watchman; was at the Relay depot when the Wabash pulled out. The Big Four had been gone about ten minutes; saw deceased between rear car and front end of caboose; am an experienced railroad man somewhat; know the mode of protecting trains when they run close upon the same track. The rear man is supposed to be a flagman to protect the trains when they stop. He protects the train by going out with a flag by day and a red lantern by night. Instead of being on rear end of caboose, deceased was on front end. From his position he could not see down the track toward the Wabash train. Deceased must have been on the platform when struck. From appearances, looked as if he was trying to get out." Cross-examination: "Assuming that a train is stopped on this track, and that the rear brakeman had notice that other trains were likely to follow, where was it his place to be?" Ans. "He is supposed to be down on the ground, back flagging far enough to stop the train in case it comes along. He ought to be in the rear, where he could flag him. He would be governed by the rules. As soon as the train stops, he is supposed to go back."

J. M. Harris, called by plaintiff, was an engineer in a passing C., B. & Q. train. He testifies that he saw the accident; that it was dark enough for a light to show; if the flagman had been tending to his business, he could have seen the Wabash train on a ways; he could certainly have seen it as far or farther than the engineer could have seen the train.

W. S. Walters, called by plaintiff, testifies: "Was conductor on train that was run into. Was waiting at Bridge Junction for orders; had been there about five minutes. My

signals were out on the rear. Saw Koons when taken out; he was dead. Was stranger to me. Asked him that evening when I went into the caboose if he had ever railroaded. He told me he had, some. Well, I says, I suppose you know how to take care of the rear end of the train? He said he did. I told him then we were going to carry signals, and a train would follow us right out, and whenever we stopped, to look out for them. I told him what to do; told him to flag them; take a red light and go back in the rear of the train. He was provided with red lights. They were lit when I went to the caboose to get my lamp. I told him, in case we would stop anywhere, to go back; to go back with his light. I know method of protecting train; it was by flagging. The rear brakeman had to stand on rear end, inside the yard limits, and flag the train. I instructed Mr. Koons how to do. Inside the yard, you go back or stand on the car, according to circumstances. We were not on time—about three hours late."

C. Murphy, for plaintiff: "I was about sixty feet north of where the accident occurred. I passed the rear end of the caboose going north. Rear brakeman was standing on the front end of the platform, leaning against the brake, when I passed, a minute and a half before the accident. There was nobody there, or nothing to indicate that any one was protecting the rear end of the train. I was the first one there on that side of the train after the collision."

Plaintiff offered in evidence the following rule of the Terminal Railroad Association: "The parallel tracks of the C., C., C. & St. L. and Terminal Railroad Association between the Relay depot and C. & A. and Wabash crossing will be operated in common, as a double track, and all trains running over these tracks must be kept to the right. If from any cause a train running on these tracks comes to a stop the flagman must be on the rear end of the rear car and display danger signals to following trains." * * *

It is clear from the consideration of this testimony that deceased was not where he should have been when the collision took place. His post was at the rear end of the

caboose, or on the track behind the train. If he had been at either of these places, he could have seen the approaching train, and if this accident was not prevented by signals given by him, he could at least have escaped from the collision. As it was, he was killed on the platform in front of the caboose, and where one witness testifies he could not see the Wabash train.

If the testimony of these witnesses is true, and it is the uncontradicted testimony of plaintiff's witnesses, he did not use the precautions he should have used to prevent a collision, and was not in the exercise of that ordinary care for his own safety which his duty, his position as employee, and the surrounding circumstances required.

For this reason the judgment is reversed and the case remanded.