## Illinois Central R. R. Co. v. Louis Zerwick, Adm.

1. CONTRIBUTORY NEGLIGENCE—*Fatal to Recovery.*—Any negligence of an employe, which materially contributes to the injury for which he sues, will defeat his action.

2. SAME—*Knowingly Disobeying a Reasonable Rule.*—If an employe knowingly and intentionally disobeys a reasonable rule or regulation established for his safety, and the act of disobedience is the proximate cause of the injury complained of, he can not recover.

Action in Case, for personal injuries.   Appeal from the City Court of East St. Louis; the Hon. SILAS COOK, Judge, presiding.   Heard in this court at the August term, 1899.   Affirmed.   Opinion filed March 16, 1900.

GUSTAVUS A. KOERNER and VICTOR K. KOERNER, attorneys for appellant; JOHN G. DRENNAN, of counsel.

T. M. MOONEYHAM, JESSE M. FREELS and M. V. JOYCE, attorneys for appellee; MERRILL & MOONEYHAM, of counsel.

MR. JUSTICE WORTHINGTON delivered the opinion of the court.

John L. Hartley was in the employ of appellant as a fireman on a freight train, and was killed about one o'clock in the morning of March 3, 1899, at a coal chute near Belleville, while the tender to the engine was taking coal from the chute. Upon arrival at Belleville, the engineer left the train on a switch from 1,200 to 1,500 feet from the chute, and then backed up to the chute. In so doing he gave the engine steam, and after running a short distance, shut off steam, leaving it to run from 600 to 800 feet by its momentum, to the right position at the chute. There were present at the chute, in addition to the engineer, Wm. J. Smith, and the deceased, two colored boys, Monroe and Charles Oliver, who were sixteen and eighteen years old, and were employed at the chute. The only eye witness to the accident was the boy Monroe Oliver, called as a witness by the plaintiff. His testimony is to the effect that Hartley was standing on the rear end of the engine tender; that from there he took hold of the chain to pull down the chute, and then walked under the chute and took up his position on the front end of the tender, between the cab of the engine and the apron of the coal chute. While in that position, and while the coal was running from the chute, the engine, from some cause not clearly shown, moved backward toward the north a short distance, about a foot, or perhaps slightly more, crushing Hartley between the engine cab and the apron of the chute.

There is a conflict in the evidence as to whether the track at the chute is level or slightly up grade; also a conflict as to the condition of the engine, there being testimony to the effect that it was "tricky," that is, with the steam shut off, it was liable to move, on account of imperfect appliances for entirely shutting off the steam. Other witnesses testify that it was in all respects in good order.

There are two counts in the declaration, which, after apt allegations of ownership and operation of the road and coal chutes, are in substance as follows:

In the first count the plaintiff alleges that defendant had a certain coal chute in the city of Belleville, which coal chute had an apron attached thereto; that the apron of said coal chute was constructed in such a manner that in case a locomotive engine should be moved while being coaled at the chute, the apron was liable to catch or strike the fireman on the engine, and thereby injure him, of which construction of the said apron and chute the said defendant had full knowledge; that plaintiff's intestate was in the employ of the defendant in the capacity of locomotive fireman; that it then and there became the duty of the defendant to instruct the plaintiff's intestate of the dangers latent and patent in the connection of his said employment; that among the duties of plaintiff's intestate was the duty of coaling his engine from the various chutes of the defendant, including the above named chute in the said city of Belleville; that the defendant negligently failed to instruct the plaintiff of the dangerous condition and dangerous construction of the aforesaid coal chute; that while the plaintiff's intestate was engaged in coaling his engine at the said chute, and while in the exercise of due care and caution for his own safety, and having no notice of the dangerous condition and dangerous construction of the coal chute, the engine upon which the said intestate was then and there working, automatically moved backward, and by reason of the dangerous condition and the dangerous construction of the said coal chute, the apron thereof came in contact with plaintiff's intestate, and then and there caught and struck him, and inflicted upon his person divers wounds, injuries and bruises, from the effects of which the said intestate then and there died.

The second count alleges that the defendant then and there had a certain locomotive engine, which was in unsafe and dangerous condition, and which had a worn and defective throttle valve, and had worn and defective brakes, which

said worn and defective and dangerous condition of the said locomotive engine, and of the throttle valve and brakes thereof, was well known to the defendant, or by the exercise of due care might have been known to it; that the defendant had, in the city of Belleville, a coal chute, which coal chute had a certain apron attached thereto, and which said chute and the apron thereof were constructed in a dangerous and unsafe manner, by being constructed in such a manner that in case a locomotive engine, while being coaled thereat, should be moved backward, the said apron was liable to catch or strike the fireman on said engine, and thereby greatly injure him; which said dangerous and defective construction of the said coal chute and the apron thereof were well known to the defendant, or by the exercise of due care might have been known to it; that it was the duty of the defendant to use reasonable care to furnish plaintiff's intestate with suitable appliances which were reasonably safe, with which to perform his work; that it was the further duty of the defendant to so instruct and advise plaintiff's intestate as to the dangers, latent and patent, that he might be enabled to perform the duties of his said employment without being exposed to any unnecessary danger or hazard; that notwithstanding its duty in this behalf, the defendant negligently failed to furnish said intestate with a locomotive engine which was then and there in a reasonably safe condition, but did furnish said intestate with the said above described dangerous and defective engine, with worn and defective throttle as aforesaid, and with worn and defective brakes as aforesaid; and then and there negligently failed to notify, instruct or advise said intestate of the dangerous condition of said engine or of the dangerous condition of the said coal chute and the apron thereof; that while said intestate was performing a duty of his employment, to wit, coaling said locomotive engine, with all due care and caution for his own safety, and without any knowledge of the said dangerous and defective condition of the said locomotive engine, and without any knowledge of the dangerous and

I. C. R. R. Co. v. Zerwick.

defective condition of the throttle valve and brakes thereof, and having no notice of the said dangerous and defective construction of the said coal chute, and without any knowledge of the dangerous and defective construction of the apron thereof, the said locomotive engine, by reason of its said dangerous and defective condition aforesaid, automatically moved backward, and the said apron of the said coal chute, by reason of its dangerous and defective construction, then and there caught and struck the body of said intestate, and then and there the same was greatly injured, wounded, and bruised, and divers bones thereof were then and there broken, from the effects of which said injuries, wounds and bruises, the said intestate then and there died.

Defendant pleaded not guilty; verdict and judgment for plaintiff for $4,500.

The deceased was making his third or fourth trip on the road. He had before worked as fireman on a switch engine in East St. Louis.

The following rule and acknowledgment of its receipt and understanding by the deceased are in evidence:

"CIRCULAR No. 111.

CHICAGO, ILL., June 1, 1897.

Several cases of fatal injuries to firemen standing between apron of coal chute and cab of locomotives while engines were taking coal, have occurred within the past two years, caused by engines moving after apron of coal chute had been lowered.

Firemen of locomotives are therefore warned that it is dangerous to stand between apron of coal chute and engine cab when engines are taking coal, and are positively prohibited from doing so.

W. RENSHAW,
Superintendent of Machinery."

"W. RENSHAW, Superintendent of Machinery :—Circular No. 111, issued by you June 1, 1897, prohibiting firemen from standing between apron of coal chute and engine cab while engine is taking coal, is received, is understood and will be obeyed by me.

June 22, 1897.                    JOHN L. HARTLEY,
Fireman, St. Louis Division."

If the decision of the case rested solely upon the evidence of negligence charged against defendant, judgment would be affirmed, there not being sufficient reasons shown for interfering with the finding of the jury upon this issue.

This leaves, then, for consideration, the question of due care on the part of the deceased, with particular reference to the rule of the company, of which he had notice, " that it was dangerous to stand between the apron of the coal chute and the engine cab when engines are taking coal," and that firemen of locomotives were positively prohibited from doing so. The notice was the more pointed by the statement of the fact that several cases of fatal injury had been caused within two years last past by engines moving after the aprons of coal chutes had been lowered.

The precise nature of the danger that subsequently caused the death of Hartley was here specifically pointed out, and to avoid it, he was positively prohibited from doing what would expose him to this danger. Over his own signature he acknowledged receipt of the notice and that he understood it. If, then, there was danger in standing between the lowered coal chute and the cab of the engine when coal was being taken, deceased knew it. If, by so standing, he met his death, when he could have performed his duty in a less dangerous position, he was guilty of contributory negligence and in such case plaintiff can not recover. I. C. R. R. Co. v. Patterson, 93 Ill. 290; C. & N. W. R. R. Co. v. Snyder, 117 Ill. 376; I. C. R. R. Co. v. Houck, 72 Ill. 291.

M. & C. R. R. Co. v. Thomas, 51 Miss. 637, is a case where an engineer violated a rule prohibiting a train from running over six miles an hour when passing switches. The court say :

" The rules of the company required engineers to slacken speed to six miles an hour when passing switches. * * * It requires no evidence to show that at this reduced speed no accident could have happened. The engineer, therefore, directly contributed to the accident by which he was injured. The rule is well settled that in such case he is not entitled to recover." And again : " The rules conclusive of this case may be briefly repeated, viz : Even if the material and machinery of the switch were defective, and the

switch out of order or misplaced, with the full knowledge of the company, nevertheless the rule as to contributory negligence is fatal to the action."

"Any substantial fault of the employe, however slight, which contributed to the injury for which he sues, will defeat his action." Kenney v. C. R., 61 Ga. 590.

"If his own negligence contributed substantially to the injury, there can be no recovery." Atlanta & W. P. R. R. v. Webb, 61 Ga. 586.

It is clear that in the present case if deceased had stayed on the hind end of the tender, when he first drew down the chute, he would not have been injured. His moving to the front end, and being between the chute and the cab, when the engine moved, directly contributed to his death.

"It can not be maintained as a general proposition, that in actions for personal injuries caused by the defendant's negligence, the contributory negligence of the injured party will constitute no defense except where the latter's negligence is the element or factor in producing the force causing the injury. It is sufficient if the plaintiff's negligence materially contributes to the injury, whether it contributes to the force causing the injury or not." Amend v. T. H. & I. R. R. Co., 111 Ill. 209.

"If an employe knowingly and intentionally disobeys a reasonable rule or regulation established for his safety, and the act of disobedience is the proximate cause of the injury complained of, he can not recover." Am. & Eng. Ency. of Law, Vol. 14, p. 908; Railway v. Horne, 69 Texas 649.

"It must be allowed as to their own employes, railroad companies may be allowed to make such rules as they think best. No one need accept service under such rules except of his own volition, but having accepted, he is bound by them, at least so far as he can not recover damages for a direct violation of them." Wolsey v. R. Co., 33 Ohio St. 235.

To the same effect are Abend v. T. & H. R. R., *supra;* C., B. & Q. R. R. v. Eggman, 59 Ill. App. 680; Wabash R. R. Co. v. Zerwick, 74 Ill. App. 670.

While it may be true that the performance of a necessary duty by an employe, that requires the violation of a known rule, or the habitual violation of the rule by employes, to such an extent as to warrant a conclusion that it is done with

the knowledge and assent of the employer, would not prevent a recovery by the employes when injured, and when the violation of the rule contributed to the injury, yet such necessity of violation, or such habitual violation, must be clearly made to appear, and the burden of proof in this regard is upon the employe.    Mere inconvenience in performing a duty, or a few minutes more time in performing it, by reason of the operation of the rule, is not sufficient to relieve an employe from the legal consequences of violating the rule.

An examination of the case at bar shows that the conclusion most favorable to appellee that can be drawn from the evidence is that the chute could be more easily and more speedily pulled down by standing on the front instead of on the hind end of the tender.    The engine was facing south and the tender was under the chute.    The testimony of the only eye witness, Monroe Oliver, is that the deceased pulled the chute half way down, standing at the back end of the tender, and then passed under the chute and stood at the front end, between the chute and the cab; that firemen most always stand on the back end of the tender when taking coal.

Charles Oliver, who, with his brother, Monroe, worked at the chute, testified that it was easier to reach the chain from the end of the tank away from the cab when the engine is headed south.

Smith, the engineer in charge of the train, testified :

" Don't know what the custom is among firemen taking coal.    I understand they are supposed to stand at the back end of the tender.    When the train was headed north it was easier to take it from the rear end; when headed south it was easier from the front end.    I guess it is difficult to take it from the rear end when the engine is headed south."

Cross-examination:

" I supposed Hartley was on the back end of the tank; supposed he had gone there to pull the chute down from the rear end of the tank.    If I had known where he was I would have warned him.    *   *   *   He was in a dangerous place—a good place to get killed.    The rear end would have been a safer place, everybody knows that."

These were witnesses called by appellee.

Smith, another witness for appellee, testified:

" I think Hartley stood in the proper place; about the only place he could stand. He could not stand any place else and handle his chute properly. He could have stood at the other places under difficulties. It would have taken more time and have been more dangerous, because he was liable to fall into the coal pit. He could not reach the chain from the south side. It would be almost impossible to pull it down from that end of the tank. He might get hold of the chain from the rear end of the tank if it was long enough."

As Monroe Oliver testifies that he did pull the chute down from the rear end, the chain must have been long enough.

For the defendant, J. W. Stokes, master mechanic for appellant, testified that he was familiar with the chutes, and that it was as easy to take coal from the rear as from the front.

J. S. Mulcooney, an engineer of appellant, testifies:

" I know this coal chute; have coaled there lots of times. A fireman can coal his engine from the rear end of the tank; have seen them do it lots of times. Back of the tank is the safest place. As a general thing they pull the chute down, step to the rear end of the tender, let the coal fall, get out of the way of the dust and coal. Between the engine cab and apron of the chute is a very dangerous place."

J. R. Murphy, a fireman and engineer, testifies that he knows the chute where Hartley was killed; has taken coal there often during the last five years; that it is as easy at that chute to take coal from hind end as from front end, going north or south; never stands in front.

Jas. A. Charrington, a fireman, knows chute; in going south we take coal at that chute by getting on back end of tender; that he had received Circular No. 111, but that he never stood in front of chute before he got circular.

The preponderance of the evidence, then, is clearly that it was not necessary to stand on the front end of the tender and in front of this chute, when taking coal, and that it

was not the custom to do so. Under these conditions the violation of the rule, as laid down in Circular No. 111, being contributory negligence on the part of deceased, prevents a recovery.

In this view of the case, it is not necessary to examine other objections urged by appellant.

Judgment reversed.