## Chicago & Alton R. R. Co. v. Daniel M. Raidy.

1. NEGLIGENCE—*Failure of Railroad Company to Obey Statute, When to Be Shown to Authorize a Recovery.*—A railroad company's failure to obey a statute or ordinance relating to the management of a train must be shown to have been the proximate cause of the injury before there can be a recovery.

2. SAME—*No Defense that Party Injured Violated a Law, Unless the Proximate Cause of the Injury.*—It is no defense for an action for negligence that the plaintiff was engaged in the violation of the law in a given particular at the time of the happening of the accident, unless the violation of the law was the proximate and efficient cause of the injury.

3. NEW TRIAL—*Affidavits as to Newly-Discovered Evidence.*—It is

not error to refuse a motion for a new trial, where the affidavit as to newly-discovered evidence fails to show any diligence to get the testimony claimed to have a controlling influence on the issues.

**Trespass on the Case**, for personal injury.  Appeal from the City Court of East St. Louis; the Hon. SILAS COOK, Judge, presiding.  Heard in this court at the August term, 1901.  Affirmed.  Opinion filed March 3, 1902.

WISE & McNULTY, attorneys for appellant.

B. H. CANBY and M. D. BAKER, attorneys for appellee.

MR. JUSTICE BIGELOW delivered the opinion of the court.

This case is an appeal from a judgment for $3,500 rendered by the City Court of East St. Louis in favor of appellee against appellant.  The action is trespass on the case for injuries received by appellee while in the service of the Wabash Railroad Company in the capacity of a switchman, in the yards of that company at East St. Louis, near a place called Bridge Junction.

Near the place where the injuries were received there are four tracks running nearly parallel with each other for some distance, the general trend of the tracks being north and south.  The track farthest east belongs to the Clover Leaf Railroad; the track next west belongs to the Wabash Railroad; the track next west of that belongs to the Big Four Railroad, and is also known as the Terminal or Bridge track; the track farthest west belongs to appellant.

The Clover Leaf track turns by an abrupt curve in a southwesterly direction and crosses all of the other tracks, which continue some distance their north and south direction; the Wabash track for some distance south of its crossing with the Clover Leaf, turns by a somewhat less abrupt curve also in a southwesterly direction, and continues in its course until it also crosses the tracks of the Big Four and the Chicago & Alton Railroad, which two latter tracks continue their general north and south trend south of the crossings named.  All of the tracks are on the same general level.  The distance from the Clover Leaf crossing with the Wabash to the crossing of the Wabash

with the Big Four is about 150 feet, and the distance from the latter crossing to the crossing of the Wabash with the Chicago & Alton is from 200 to 250 feet. It was at the last named intersection of tracks that appellee received his injuries.

All the tracks are in constant use, and the place where the accident happened is a dangerous one. At the Clover Leaf crossing there was a semaphore and signal lights, which controlled the crossing. A white light gave the right of way on the crossing and a red light denied it. At the Big Four crossing there were two red lights, each at the ends of a board; when the board stood horizontal the Wabash had the right to the crossing, and when the position was oblique the Big Four had the right of way.

At the Chicago & Alton crossing there was a switch target which was governed by a single lever; when the light was red for the Alton track there was always a white light thrown on the Wabash track, and *vice versa*. The white light, displayed for either track, gave such road the right to cross, and the red light denied that right.

The accident happened on the night of the 8th of February, 1899, it being very dark at the time. The injuries received are the result of a collision between a Wabash train and a Chicago & Alton train at the last named crossing. The Wabash train was doing switching work. It consisted of an engineer, a fireman and three switchmen, of whom appellee was one. There were six box cars in the train; the engine was pushing them along the Wabash track in a southerly direction. There was a switchman on the top of the car farthest away from the engine; appellee was stationed on the top of the next car, and the speed at which the train was being propelled was estimated at from six to eight miles an hour, but the evidence shows that as the train approached the place where the accident happened the speed was brought down to about five miles an hour. The train on the Chicago & Alton road was made up of an engine and eighteen freight cars; it was being pulled in the ordinary way and was headed north on

the tracks of the road.   Appellee testified that his train
came to a full stop before any of the crossings named had
been reached; but the evidence makes it quite clear that no
stop was in fact made.

It is also quite certain from the evidence, that the sema-
phore light shone white for the Wabash track and red for
the Chicago & Alton track, both before and after the acci-
dent.

At a distance of about 175 feet, the switchman in front
of appellee noticed the Alton train approaching, but he
gave no signal to the engineer of his train to stop at that
time. · He explains his act by insisting that the signal lights
gave his train the right to the crossing as against the other
train, and that therefore he thought the Alton train would
obey and come to a stop before it reached the crossing.
Appellee himself was, at that time, engaged in the look-
out for other trains on other tracks.   A collision resulted;
the Alton engine struck the car on which appellee was
stationed with such force that the sills were broken in two,
and two cars were so badly damaged that they could not
be repaired.   Appellee was thrown from the top of the
car to the ground and was so badly injured that he was
taken to a hospital, where he remained about six weeks.

Under this condition of the matter it is contended by
appellant that appellee was negligent in  not seeing the
train which caused the injury, and in not bringing his own
train to a stop so as to avoid  the collision; and if this con-
tention is not true, that the injury is the result of the neg-
ligence of the other switchman, who is a fellow-servant
with appellee.

It is further contended that under section 75 of chapter
114, Hurd's R. S., the Wabash crew was negligent in not
bringing its train to a full stop within  800 feet from the
crossing where the accident happened, and that therefore
appellee's own negligence and that of his fellow-servants in
violating the statute, was a contributory cause of his inju-
ries.   At the close of plaintiff's evidence appellant made a
motion to direct a verdict for the defendant; this motion

was overruled by the court and appellant excepted. Appellant introduced no evidence except a plat of the various tracks heretofore referred to, showing the different crossings in question. Appellant then renewed its motion to direct a verdict for the defendant, but the court again overruled the motion and appellant excepted.

Whether appellee was himself not negligent in not seeing the approaching train, was peculiarly a question of fact for the jury. There were many other tracks with possible trains to be guarded against in that yard, and it is not pretended that appellee ought to have been able to guard against all possible dangers. There were two other switchmen on the top of the Wabash train, which is some evidence that it was not expected that appellee should be able to ascertain all possible dangers. While this fact may not be evidence against appellant, inasmuch as it had no hand in directing the make-up or movements of the Wabash crew, yet the fact does bear on the question of the care of the crew with which appellee was identified. He himself is not shown to have omitted any act that a prudent person ought to have done under similar circumstances. If it should be admitted that his fellow-servant on top of the train was negligent in not bringing his own train to stop as soon as he discovered the other to be approaching on the Alton tracks, it by no means follows that appellee has no redress against appellant because the claimed negligence which caused the injury was not effected through any agency of the common master, the Wabash railroad. Chicago & Alton Ry. Co. v. Harrington, 192 Ill. 9; S. C., 90 Ill. App. 638.

The point most relied on in the argument to bar appellee's right of recovery, is the fact that the Wabash crew did not bring their train to a full stop within 800 feet of the place of the accident. This evidence went to the jury and tended to show that appellee was contributorily negligent. But it was purely a question of fact for the jury, whether, under the circumstances, the disobedience of the law was a proximate or a remote cause in the result which followed. And appellant itself submitted this phase of the matter to the jury in the following instruction :

" The law is that all trains, running on any railroad in this State, when approaching a crossing with another railroad upon the same level, shall be brought to a full stop within eight hundred feet of the crossing, and the engineer in charge of the train shall positively ascertain that the way is clear and the train can safely resume its course by proceeding to pass the crossing; and if the jury believe, from the evidence in this case, that the engineer of the switching crew, of which plaintiff was one, did not bring the train to a full stop within eight hundred feet of the crossing of another railroad on the same level, and thereby caused the collision by which the plaintiff was hurt, then the plaintiff can not recover in this case."

Plaintiff asked but one instruction and that was as to the measure of damages. Three other instructions given at the instance of appellant, presented the same views to the jury as the one before quoted, so that they must have found that the violation of the law by appellee's fellow-servants, in the matter complained of, did not cause the injury, and we are unable to see wherein the verdict of the jury is wrong on this question. The violation of a statute is no doubt *prima facie* evidence of negligence (1 Shearman & Redfield on Negligence, Sec. 13); but it has been repeatedly held by the Supreme Court of this State that a defendant's failure to obey a statute or an ordinance relating to the management of trains must be shown to have been a proximate cause of the injury before there can be a recovery. As a complement of this rule, it must also be held that a plaintiff's failure to obey a statutory regulation will not bar his right of recovery unless such failure was an efficient contributing cause in the result which followed. And this, we think, is settled by the case of C. & N. W. R. R. Co. v. Snyder, 117 Ill. 376; S. C., 128 Ill. 655. See Bishop on Non-Contract Law, Secs. 40–43, 61–64. See also Beach on Contributory Negligence, Sec. 45, where the law is stated to be:

" It is no defense to an action for negligence that the plaintiff was engaged in the violation of the law in a given particular at the time of the happening of the accident, unless the violation of the law was a proximate and efficient

cause of the injury. Some mere collateral wrong-doing by the plaintiff that has no tendency to occasion the injury can not, of course, avail the defendant through whose negligence the injury has been suffered. Thus, for example, driving on the wrong side of the road will not, as a matter of law, prevent a recovery in a case of collision. It is a circumstance to go to a jury on the question of plaintiff's negligence."

For similar views see also L., N. A. & C. R. R. Co. v. Johnson, 44 Ill. App. 56. Under this statement of the law we can not disapprove of the action of the court in refusing to take the case from the jury.

The final question is, did appellant's negligence cause the injury? The argument filed does not pretend that appellant was not negligent in the management of its train. The trainmen knew that the red light on appellant's track denied them the right to the crossing; they knew that a red light displayed on their track was certain to display a white light on the track of the Wabash, because both lights were operated together by the same turn of the lever. The evidence is well-nigh uncontradicted that there was a white light on the Wabash track; why did not appellant's servants then see the red light on their own track? Each crew had equal opportunities for seeing their own signals. We do not see how the jury could have found otherwise than that the servants of appellant were negligent in not seeing the red signal light; or, if seeing it, in not obeying it. Either duty obeyed, the accident would not have happened.

When the case was tried, the jury returned a verdict for the sum of $6,000, but the court required a remittitur of $2,500, which was made. We are unable to see that the judgment finally rendered is excessive, or that, under the evidence, the jury were actuated by passion or prejudice.

The affidavits as to newly-discovered evidence fail to show any diligence to get the testimony claimed by appellant to have a controlling influence on the issues submitted, and we do not think the court erred in refusing a new trial on that ground.

The judgment of the City Court of East St. Louis is accordingly affirmed.